IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER VALES, et al.                    :

                                       :

      v.                    : Civil Action No. DKC 2005-3110
                              (Consolidated with DKC 05-2339)
                                       :

ALMA PRECIADO, et al.                  :

                                       :

### MEMORANDUM OPINION

Presently pending and ready for resolution in these consolidated cases involving a loan transaction in 2005 are the following motions filed in 05-2339 prior to consolidation: (1) a motion by Roger R. Vales for summary judgment (paper 23) and (2) a motion by Alma Preciado for leave to file a Second Amended Complaint (paper 31).  The following pending motions were filed in 05-3110: (3) a motion by Preciado to dismiss the complaint of Roger and Lourdes Vales (paper 21), (4) a motion by Preciado to dismiss the cross-claim of Dorita Down (paper 37), and (5) a motion by Preciado to dismiss a duplicate cross-claim of Down (paper 49). The issues are briefed fully and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Roger Vales' motion for summary judgment will be denied; Preciado's motion for leave to file a Second Amended Complaint will be granted; Preciado's motion to dismiss will be granted in part and denied in part; and Preciado's two motions to dismiss the cross-claims filed by Down against her will be granted in part and denied in part.

**I. Background**

**A.**   ***Preciado v. Vales***

**1.   Factual Background**

The first lawsuit, *Preciado v. Vales*, Civil Action No. DKC 2005-2339 ("*Preciado Action*"), was filed in the Circuit Court for Montgomery County, Maryland, on July 15, 2005, by Metropolitan Financial Services ("Metropolitan") and Alma Preciado ("Preciado") against Roger Vales and Lourdes Vales.   The original complaint contained three counts:   malicious prosecution (Count I), defamation (Count II), and tortious interference with advantageous business relationships (Count III).   The defendants removed the case to this court, asserting that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1]

Preciado alleged the following facts in the original complaint.   Dorita Lemos Down ("Down") sought to do one or more development projects under the name Pidegro LLC, which stands for Pioneer Development Group.[2]   These development projects serve the purpose of building lower-cost housing for economically disadvantaged people in Mexico and other countries.

Preciado, a resident of Montgomery County, Maryland, owns and operates Metropolitan Financial Services.   Preciado has known Down

---

[1]  Roger and Lourdes Vales are residents of the state of Florida.   (*Preciado Action*, paper 1, ¶ 5).

[2]  Down is not named as a party in the *Preciado Action*.

2

"for many years" through civic and charitable activities.  Several years ago, Down sought to enlist Preciado in the Pidegro plans. Down also enlisted the help of William H. Camp, Jr., a resident of the District of Columbia.[3]   At the request of Down, Preciado located other individuals to assist in the Pidegro plans.  At one point, Preciado, Down, and Camp traveled to Mexico City to set up a Pidegro project there.

Later, Down approached Preciado and said she had financing for Pidegro but she wished to secure a bridge loan as seed money. Until this time, Metropolitan had no involvement with the Pidegro plans or Pidegro LLC.  Preciado (d/b/a Metropolitan) agreed to assist Down in securing a bridge loan for Pidegro until Down could secure more financing.  Down completed a Uniform Residential Loan Application, dated March 17, 2005, in which she requested a loan in the amount of $350,000.00, and offered real estate located at 5802 Augusta Lane, Bethesda, Maryland ("Bethesda property"), as collateral.  In the loan application, Down represented that title to the Bethesda property was held in joint tenancy by Down and her husband, Harry Down.

Shortly after Down provided the loan application, Roger Vales, who had placed loans previously through Metropolitan, made an "unannounced" visit to the office of Metropolitan to ask why Metropolitan had not offered him any loan transactions recently.

---

[3] Camp is not named as a party to the *Preciado Action.*

Preciado provided Down's loan application and Vales decided to fund Down's $350,000 loan. Preciado then obtained a lien report on the Bethesda property, which was forwarded to Vales. This lien report revealed that title to the Bethesda property was solely in the name of Harry Down, and not in the names of Dorita Down and Harry Down as joint tenants. Roger Vales made no comments to Preciado about the content of the report. Nonetheless, Roger Vales delivered a check to Metropolitan, made payable to Dorita Lemos Down in the amount of $350,000 and dated April 5, 2005. Preciado then forwarded a draft deed of trust to Roger Vales that identified the grantees as Dorita Down and/or Harry Down. Roger Vales asked orally that Preciado get the signature of Harry Down on the deed of trust.

On the date of settlement, Down asserted that her husband, Harry Down, could not attend the settlement due to his high blood pressure. Down alone signed the promissory note and deed of trust, and based upon the representations of Down, Preciado released the $350,000 check to her. Preciado expected Down to bring Harry Down to Metropolitan's offices within the next day or two to execute the deed of trust.

After it was too late to stop payment on the check, Down asserted that she never told her husband about the loan. Down deposited the check into an account in the name of Pidegro LLC. Preciado demanded that Down return the proceeds of the $350,000

check or provide a valid lien on the Bethesda property, but Down failed to do so.  Preciado then filed suit in the Circuit Court for Montgomery County against Down to recover the $350,000.

On May 24, 2005, Roger Vales swore out an application for criminal charges, which lead to the issuance of theft charges against Preciado.  The application stated:

> The Defendant Alma Preciado stole $350,000.00 from my wife and I on April 5, 2005 in Silver Spring, Maryland.
> Alma Preciado is the President of Metropolitan Financial Services.  She told me she could place a $350,000.00 First Deed of Trust Loan.  She asked me to give her a check for $350.000.00 to be lent to Dorita Lemos Down and secured against real estate known as 5802 August Lane, Bethesda, MD.
> Alma Preciado knew Dorita Lemos Down did not own this property and could not secure a loan on it. No valid secured loan was ever made but my check was deposited into Citibank FSB Account #254070116 or 15210626.  This account belongs to Pidegro LLC. Alma Preciado has a financial interest in Pidegro LLC.

(*Preciado Action*, paper 23, ex. 6).  On June 21, 2005, Preciado was required to appear in district court for a preliminary inquiry.  After Preciado met with a representative of the State's Attorney's Office and after Roger Vales was interviewed, the criminal charges against Preciado were dismissed (*nolle prossed*).  Preciado alleges that the application Roger Vales swore out contained two false statements: (1) that Preciado knew Down did not own the property and (2) that Preciado asked that the loan check be made payable to Down, when in fact Vales arrived with the check already written out

to Down.    Preciado  also  claims  that  Roger  Vales  withheld
information about the  lien  report  (which  purportedly  stated  that
the  sole  owner  of  the  property  was  Harry  Down),  and  that
information  might  have  affected  the  decision  to  prosecute.
Preciado alleges that Roger Vales filed the charges in response to
his  wife's  anger  over  the  transaction  and  that  Roger  Vales  has
expressed a desire to "ruin" Preciado.

Preciado  then  filed  the  present  suit  against  the  Roger  and
Lourdes Vales for malicious prosecution, defamation, and tortious
interference with advantageous business relations.

## 2.    Procedural Background

Roger and Lourdes Vales filed a motion to dismiss the *Preciado
Action*, and on November 14, 2005, the motion to dismiss Counts II
(defamation) and Count III (tortious interference with advantageous
business  relationships)  was  granted.    (Papers  13,  14).    In
addition,  Preciado  was  ordered  to  clarify  the  status  of
Metropolitan in order to determine whether Metropolitan is a proper
plaintiff.  On November 29, 2005, Preciado and Metropolitan filed
an amended complaint consisting of a single claim for malicious
prosecution.  Because no red-lined version was submitted, the full
extent of the changes in the amended complaint are not entirely
clear.  Nevertheless, the changes included the deletion of Lourdes
Vales as a defendant.  (Paper 15).  Roger Vales then filed another
motion to dismiss.  All independent claims brought by Metropolitan

were dismissed, and the motion to dismiss the malicious prosecution claim was denied because Roger Vales' motion relied in large part on exhibits attached to the motion and the court declined to reconfigure the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.  (Papers 19, 20).

On February 17, 2006, Roger Vales filed a motion for summary judgment on the malicious prosecution claim, and on March 27, 2006, Preciado filed a motion for leave to file a Second Amended Complaint.  Both motions are pending.  On April 6, 2006, a motion to consolidate this case with another case brought by the Roger and Lourdes Vales against Preciado, Down, and Camp was granted.

**B.   *Vales v. Preciado***

**1.   Factual Background**

The second lawsuit, *Vales, et al. v. Preciado, et al.*, Civil Action No. DKC 2005-3110 ("*Vales Action*"), was filed in the United States District Court on November 16, 2005, by Roger Vales and Lourdes Vales against Preciado, Down, Camp, Pidegro LLC, and Pidegro Ltd.  The original complaint contained seven counts: intentional misrepresentation against Down (Count I); deceit against Down (Count II); constructive fraud against Preciado (Count III); unjust enrichment against Pidegro LLC and Pidegro LTD (Count V); breach of fiduciary duty (Count VI); civil conspiracy against Preciado, Down, Pidegro, LLC, Pidegro LTD, and Camp (Count VII);

and a claim for injunctive relief (Count VIII).[4]   An amended complaint was filed February 8, 2006, adding a claim for intentional misrepresentation against Preciado (Count IV) and expanding the claim for unjust enrichment to apply to all defendants. (Paper 23).

The Valeses' complaint originally alleged the following facts. Preciado and Down are members of Pidegro LLC.  Pidegro LLC was formed in the District of Columbia and Pidegro Ltd. is a corporation formed in the state of Delaware and is recorded as a foreign corporation in the state of Maryland.

Preciado initially communicated with the Valeses in February or March 2005, when she informed them that she had an opportunity for them to make and/or fund a two-year balloon loan secured by the Bethesda property.[5]  Preciado informed them that the loan would be made to her friend and business partner, Down, and to Down's husband, Harry Down.  Preciado assured them that she had known the Downs for many years, that the Downs were financially sound, and that Preciado would vouch for their credibility and their financial creditworthiness.  After this conversation, Preciado continued to contact the Valeses in an effort to convince them to make the loan. In early March 2005, Preciado told them that they needed to make an

_____

[4] The original complaint did not contain a Count IV.

[5] The Valeses previously had engaged in two real estate loan transactions with Preciado and Metropolitan in 2004.  Both transactions involved secured transactions of real property.

immediate decision with regard to funding the loan because other investors were interested.

In reviewing the loan application, the Valeses observed that only Dorita Down had signed the application and there was no financial information relating to Harry Down in the file.  They also allege that the signature that appears on the loan application is not the signature of Dorita Down.  When they questioned the lack of financial information about Harry Down, Preciado told them not to worry and that they could obtain the information.  Preciado reiterated that she could vouch for the financial ability of the Downs and that she and Dorita Down were affiliated in Pidegro LLC and Pidegro Ltd.  In addition, they were presented with a proposed HUD settlement statement that identified the borrowers as Harry and Dorita Down.  Based upon the representations and assurances of Preciado, Roger and Lourdes Vales felt comfortable with the loan.

After this initial meeting, Preciado continued contacting them to promote the transaction and to reassure them.  Roger and Lourdes Vales agreed to make the real estate loan.  On April 5, 2005, the Valeses again were shown the loan transaction file, which included a balloon note and a deed of trust; both contained signature lines for Harry and Dorita Down.  Before delivering the $350,000 check, the Valeses were assured by Preciado that the loan would be fully secured and that she would make certain that all loan documents and the deed of trust were signed by the Downs at settlement and that

no proceeds would be released until all documents were executed and processed by a title company, BMS Title.   Based on these assurances, Roger Vales took out his checkbook and asked Preciado to whom the check should be written.   Preciado told him to make the check payable to Dorita Lemos Down.   After giving the check to Preciado, Preciado told them that they would receive photocopies of all documents after the documents were executed fully.   Roger and Lourdes Vales then returned to their home in Florida.

When Roger and Lourdes Vales did not receive any documents or further communications from Preciado, they contacted Preciado to confirm that everything had been processed.   Preciado said she would contact BMS Title and would return their telephone call, but she did not call.   Additional phone calls to Preciado were unsuccessful.

In early May 2005, Roger and Lourdes Vales returned to Maryland and went to the land records for Montgomery County to see if there were any records relating to the loan transaction on file. They found no liens on the Bethesda property.   The Valeses then went to BMS Title.   The principal of BMS Title, identified as "Harry," told them that nothing had transpired with respect to the loan and that neither he nor BMS Title had conducted any settlement relating to the loan transaction.   "Harry" also told them that Dorita Down and Preciado had attempted to obtain a loan without the signature of the real property's owner, Harry Down.   He further

told them that Preciado had contacted BMS Title about the settlement and asked that she be able to present an affidavit stating that Harry Down agreed to the settlement and to the placement of the deed of trust on the property.  BMS Title declined and said Harry Down would have to be present at settlement.

Roger and Lourdes Vales then contacted Preciado and told her that land records showed no lien and that BMS Title had not conducted a settlement on the loan.  "Alma was silent for a few moments and then she told the Plaintiffs not to worry about it and that I, Alma, would take care of everything." (*Vales Action*, paper 1, ¶ 40).  The Valeses then went to her office.  There, Preciado made a telephone call and left a message for Dorita Down to return her call.  Later that day, Preciado arranged to meet them and Dorita Down at the Bethesda property.  The Valeses went to the home several hours before the scheduled meeting and knocked on the door.  A female who answered confirmed she was Dorita Down.  Down told them that her husband, Harry Down, did not know of the loan transaction and that it would be taken care of the following day, May 17, 2005.  The Valeses then cancelled the meeting that was to occur in the next few hours.

On May 17, 2005, Roger and Lourdes Vales met at the Bethesda property.  Preciado and a male, later identified as Camp, were in attendance; Harry Down was not present.  Camp gave them a business card that showed the name of Pidegro LLC.  Before this meeting, the

11

Valeses had no knowledge that Pidegro LLC and/or Pidegro Ltd. had any involvement in the loan transaction.  Camp told them that the funds were safe, and that they could let the balloon note run its course or they could obtain a refund of their money in six months. The Valeses said they wanted Harry Down to sign the documents so that the loan would be secured fully.  When it became clear that Harry Down was not going to attend the meeting, the Valeses left the home.  Preciado followed them, and told them to not be upset, that she would vouch for Dorita Down, and that she would place her three properties as security for the loan.  After the Valeses accused Preciado of fraud and stated that their money was stolen, Preciado proposed signing a note stating that she herself would pay them the money.

Roger and Lourdes Vales then attempted to have the loan secured upon Preciado's real estate, but learned that the properties were in the name of her son, not in the name of Preciado.  With the help of legal counsel, the Valeses sought to have their loan secured by Preciado's property.  A meeting was scheduled in May 2005 in which Preciado and her son were to sign a note and deeds of trust; neither appeared.

Later, the Valeses learned from Camp that Pidegro LLC had issued payment from its account to Metropolitan in the amount of $19,975.33, which represented the amount of settlement costs

outlined in the unexecuted HUD settlement statement.[6]  The closing costs included fees to Metropolitan as well as fees to BMS Title. Roger and Lourdes Vales allege that the closing cost allocated for interest on the loan was never paid to them; no money was spent on transfer or recording feeds; and no money was paid to BMS Title.

The amended complaint makes the same allegations with some additions.  They include allegations that Camp is a resident of Washington, D.C., and is a member of Pidegro LLC; that Preciado, Camp, and Down knew that Pidegro was in need of cash; that Preciado knew that the Bethesda property was owned solely by Harry Down and that the Valeses would only make the loan if assured that the loan would be fully secured by the Bethesda property; and that the Valeses' $350,000 check was endorsed and paid over to Pidegro LLC and was deposited into a Citibank account of Pidegro LLC.

2.   **Procedural Background**

Preciado has filed a motion to dismiss the amended complaint. (*Vales Action*, paper 21).  In addition, on March 24, 2006, Dorita Down filed a cross-claim against Camp and Preciado containing the following counts: contribution/indemnification against Preciado and Camp (Count I); fraud against Preciado (Count II); abuse of process against Preciado (Count III); and unjust enrichment against Camp (Count IV).  (*Vales Action*, paper 30).  Preciado has filed a motion

---

[6] Roger and Lourdes Vales do not say when they learned this information from Camp.

to dismiss the cross-claim of Down.  (*Vales Action*, paper 37).  In addition, Down filed another cross-claim against Preciado and Camp that duplicates the earlier cross-claim (*Vales Action*, paper 46), and Preciado filed a motion to dismiss it as well (*Vales Action*, paper 49).

## II.   *Preciado Action* Motions

## C.   Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B.    Roger Vales' Motion for Summary Judgment**

In Maryland, the elements of malicious prosecution are: (1) "a criminal proceeding instituted or continued by the defendant

against the plaintiff," (2) "termination of the proceeding in favor of the accused," (3) "absence of probable cause for the proceeding," and (4) the prosecution was instituted with "malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Montgomery Ward v. Wilson*, 339 Md. 701, 714 (1995) (internal quotation marks omitted).

With respect to probable cause, the Court of Appeals of Maryland has held that:

> Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. *Nance v. Gall*, 187 Md. 656, 669, 50 A.2d 120, 126. What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury. *Cooper v. Utterbach*, 37 Md. 282, 317; *Campbell v. Baltimore & Ohio R. Co.*, 97 Md. 341, 344, 55 A. 532; *Stansbury v. Luttrell*, 152 Md. 553, 556, 137 A. 339; *Stewart v. Sonneborn*, 98 U.S. 187, 25 L.Ed. 116, 119. If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom, are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact. *Nance v. Gall*, 187 Md. 656, 669, 50 A.2d 120, 126.

*Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 506 (quoting *Kennedy v. Crouch*, 191 Md. 580, 590-591 (1948)).

In the context of malicious prosecution, the Court of Appeals has defined malice as follows:

> [A]ny motive other than that of instituting
> the prosecution for the purpose of bringing
> the party to justice, is a malicious motive on
> the part of the person who acts under the
> influence of it.  As was accurately stated by
> Mr. Justice Parke, afterwards Baron Parke, in
> the case of *Mitchell v. Jenkins*, 5 B. & Ad.
> 594, "the term 'malice,' in this form of
> action, is not to be considered in the sense
> of spite or hatred against an individual, but
> of *malus animus*, and as denoting that the
> party is actuated by improper and indirect
> motives."  If, for example, a prosecution is
> initiated upon weak and unsubstantial ground
> for purposes of annoyance, or of frightening
> and coercing the party prosecuted into the
> settlement of a demand, the surrender of
> goods, or for the accomplishment of any other
> object, aside from the apparent object of the
> prosecution and the vindication of public
> justice, the party who puts the criminal law
> in motion under such circumstances lays
> himself open to the charge of being actuated
> by malice. Such motives are indirect and
> improper, and for the gratification of which
> the criminal law should not be made the
> instrument.

*Montgomery Ward*, 339 Md. at 718-19 (quoting *Johns v. Marsh*, 52 Md.

323, 332-33 (1879)).  Although a separate element, Maryland

apparently permits, but does not require, malice to be inferred

from a lack of probable cause.  *DiPino v. Davis*, 354 Md. 18, 55,

729 A.2d 354, 374 (1999); *Hooke v. Equitable Credit Corp.*, 42

Md.App. 610, 616, 402 A.2d 110, 114 (1979).

Reliance on an attorney's advice is a recognized defense to

malicious prosecution.  The Court of Appeals stated:

> Proof that [the defendant] placed the facts
> fully and fairly before his counsel and acted
> upon his advice is a good defense to the
> charge of want of probable cause. *Cooper v.*

17

> *Utterbach*, 37 Md. 282, 315 (1973); *Stewart v.*
> *Sonneborn*, 98 U.S. 187, 25 L.Ed. 116, 120
> (1879).

*Gladding Chevrolet*, 264 Md. at 506 (quoting *Kennedy*, 191 Md. at 587); *see also Smithfield Packing Co., Inc. v. Evely,* __ Md.App. __, 2006 WL 1130880, at *7 (May 1, 2006)(stating that "a defendant may not be held liable for malicious prosecution for relying upon the independent judgment of a prosecutor or attorney where the defendant has made a full disclosure of all material facts relative to the charges being made").

Roger Vales asserts that Preciado cannot prove the first two required elements: the institution of a criminal proceeding by the plaintiff against the defendant and termination of the proceeding favor of the plaintiff. (*Preciado Action*, paper 23, at 5). This aspect of the motion is without merit. Preciado has presented evidence that Roger Vales instituted a criminal proceeding against her by providing a copy of the criminal complaint, signed by Roger Vales, that identifies Roger Vales as the complainant and Preciado as the defendant. (*Preciado Action*, paper 2, ex. 6). Preciado states under oath in her verified amended complaint that, after she met with a representative of the State's Attorney's Office, the criminal charges against her were *nolle processed*. (*Preciado Action,* paper 15, ¶ 166). Thus, she has come forward with sufficient evidence on the second element. *See Hines v. French*, 157 Md.App. 536, 554 (2004)(stating that "[a] nol pros acts as a

dismissal and, thus, the prosecution of appellant for negligent driving ended in her favor").

Vales also argues that Preciado "has never substantiated an absence of probable cause" for initiating a proceeding against Preciado.[7] *Id*. With respect to this element, he appears to argue that Preciado cannot show that he had an improper purpose or motive in filing the theft charge. He also challenges evidence of malice. Mr. Vales asserts that he had a proper basis for initiating the statement of charges, by referencing his complaint and amended complaint in the *Vales Action* and the allegations he makes therein. *Id*. at 6. He points out that Preciado admits in her Amended Complaint that "Roger Vales did ask orally for Metropolitan Financial Services to also get the signature of Harry W. Down on the Deed of Trust." (*Preciado Action*, paper 15, ¶ 94). "Plaintiff does not allege that the Defendant authorized the release of Defendant's money to Dorita Down, without the required signatures to secure the loan on the subject real estate." (*Preciado Action*, paper 23, at 7). He asserts that Preciado had a fiduciary

---

[7] Roger Vales incorrectly asserts that Preciado also must show that she was arrested, her property was seized, or she suffered a special injury. (*Vales Action*, paper 23, at 5). The Court of Appeals has held that a suit based on prosecution of a civil action requires this additional element, but that a claim based on prosecution of a criminal action does not. *See Exxon Corp. v. Kelly*, 281 Md. 689, 693 n.5 (1978)("An additional element is required to be shown when the suit springs from a civil action: that damages were inflicted on the plaintiff by seizure of his property or other special injury.").

obligation when he gave the $350,000 to Preciado, *id*. at 8-9, and that "the civil Court(s) would view the actions of Preciado as conversion and/or a wrongful taking.  Defendant had a proper basis to view the actions by Preciado as theft of the $350,000 and he initiated an Application for Statement of Charges accordingly." *Id*. at 9.  Finally, he asserts that he was acting upon the advice of legal counsel when the Application for Statement of Charges was filed. *Id.*

He supports his argument with a HUD settlement statement; affidavits by Roger Vales and Lourdes Vales; a copy of the $350,000 check; and a copy of the criminal charges against Preciado.[8]  In the affidavits, Roger Vales and Lourdes Vales state that the land records in Montgomery County showed that the Bethesda property was solely in the name of Harry Down; that during their meeting with "Henry" at BMS Title they learned that Down and Preciado had attempted to get a loan secured against the Bethesda property without the signature of the deed owner; and that they gave this information and their records to their attorney, Robert Richards, who helped them file the Application for the Statement of Charges. (*Preciado Action*, paper 23, Roger Vales aff., Lourdes Vales aff.).

On this record, a question of fact exists as to whether there was "a reasonable ground of suspicion supported by circumstances

---

[8] Roger Vales appears to have provided the wrong settlement statement.  The settlement statement provided involves a property located in Germantown, Maryland.

sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged." As noted above, evidence of lack of probable cause suffices to permit an inference of malice, thus refuting the argument that Preciado cannot show that Vale had an improper purpose or motive. Moreover, Preciado disputes many aspects of Roger Vales' version of what took place during the course of the loan transaction. For instance, Roger Vales contends that Preciado knew Down did not own the Bethesda property, but Preciado asserts that when Preciado received the loan application, she had no reason to doubt that Down had or could obtain title to the Bethesda property. (*Preciado Action*, paper 15, ¶ 15). Roger Vales also alleges that Preciado told him to write the check out to Down, while Preciado states that Roger Vales delivered the $350,000 loan check "without any written instruction of any kind." *Id.* at ¶ 90. Preciado also stated that "Defendant ROGER R. VALES appeared at the offices of Metropolitan Financial Services with the check already written out as payable to Non-party DOWN." *Id.* at ¶ 174. Both of these allegations – that Preciado knew Down did not own the property and that Preciado told Roger Vales to write the check out to Down – are asserted in the criminal complaint.[9] Preciado also

---

[9] The allegation that Preciado knew Down did not own the property is stated expressly in the criminal complaint. The allegation that Preciado told Roger Vales to write the check out to Down is stated less clearly. The complaint states that Preciado
(continued...)

argues that Roger Vales could not have had probable cause to believe she was guilty of theft because she twice sent him the lien report on the property, which stated that the only individual on the record title was Harry Down, *id.* at ¶ 85, and therefore, Roger Vales was on inquiry notice about the status of the title of the Bethesda property.[10]   Thus, there is a dispute of fact as to what Roger Vales knew when he pursued the criminal charges, and whether he had a reasonable ground of suspicion that Preciado had committed theft.

Finally, a question of material fact exists as to whether Roger Vales can assert the defense of reliance on an attorney's advice.   In her opposition memorandum, Preciado provides portions of a deposition of Robert Richards, the attorney who assisted Roger Vales in filing the criminal theft charge.   Richards stated that he relied on the information that Roger and Lourdes Vales provided in evaluating a possible criminal charge and that he did not do any independent research of his own.   (*Vales Action*, paper 40, at 40-41, 55-56).   He stated that ultimately it was the Valeses who decided to file the criminal charges, *id.* at 63, 102, and that he was not sure whether he saw the loan application before he assisted

---

[9](...continued)
"asked me to give her a check for $350.000.00 to be lent to Dorita Lemos Down."

[10] Roger Vales does not say in his papers whether he received these reports.

the Valeses in filing the charges, *id*. at 119.  Thus, a question of fact exists as to whether the Valeses provided Richards with all documents they had relating to the loan transaction and whether they placed the facts fully and fairly before Richards and acted upon his advice.

Accordingly, Roger Vales' motion for summary judgment on Count I of the *Preciado* complaint will be denied.

## C.   Preciado's Motion to Amend

Preciado has filed a motion for leave to file a Second Amended Complaint.  (*Preciado Action*, paper 31).  In the proposed Second Amended Complaint, Preciado seeks to (1) add Lourdes Vales as a defendant, (2) add a claim of defamation, and (3) add allegations regarding the Valeses' consultation with Richards and that the Valeses failed to disclose all of the relevant and material facts to their attorney and to the commissioner to whom the Valeses swore out the complaint.

A party may move to amend his or her complaint pursuant to Rule 15(a), and leave "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  Under Rule 15(a), "[t]he decision to grant a party leave to amend its pleading rests within the sound discretion of the district court."  *HealthSouth Rehab. Hosp. v. Am. Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996), *cert. denied*, 520 U.S. 1264 (1997) (citing *Sandcrest Outpatient Serv. v. Cumberland County Hosp. Sys.*, 853 F.2d 1139, 1148 (4th Cir. 1988)).  The

general and oft-cited rule is that leave sought should be freely given "in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Roger Vales asserts that Preciado should not be allowed to amend her complaint. (*Preciado Action*, paper 32). First, he objects generally because Preciado did not file a red-lined version of the proposed second-amended complaint as required by Local Rule 6(c). He also objects to the addition of a defamation claim on two grounds: (1) the court already dismissed a defamation claim, and (2) the defamation claim is untimely because Preciado previously knew about a possible defamation claim "and the same was untimely dismissed and/or withdrawn." (*Preciado Action*, paper 32, ¶ 9). In addition, he opposes the proposed amendments to the malicious prosecution claim on several grounds. First, he objects that Preciado wishes to seek compensatory damages of $1 million, instead of the $500,000 in the amended complaint even though "[t]here is no suggestion in the Motion for Leave to Amend that Plaintiff's alleged damages have changed." *Id.* at ¶ 10. Second, he objects to the addition of Lourdes Vales as a defendant, by asserting that there is no suggestion that she filed the statement of charges against Preciado and, in any event, the application was filed on

24

the advice of legal counsel.  *Id*. at ¶ 13.  Third, he asserts that Preciado is trying to harass Lourdes Vales.  *Id*. at ¶ 18.

Roger Vales fails to demonstrate undue delay, bad faith, prejudice or futility, which might support a denial of Preciado's motion.  First, there is no delay on the part of Preciado.  The scheduling order set March 27, 2006, as the deadline for the amendment of pleadings, and Preciado filed her motion to file a Second Amended Complaint on March 27, 2006.  Although Preciado failed to file a red-lined version of her Second Amended Complaint with her motion, she did so on March 30, 2006, only three days after filing her motion.

With respect to adding a defamation claim, Roger Vales' opposition is insufficient to overcome the standard of liberal amendment in Rule 15(a).  Although the defamation claim was dismissed previously, the dismissal was without prejudice.  Moreover, the defamation claim was not "untimely dismissed and/or withdrawn," but rather simply dismissed.[11]

His opposition to the proposed changes to the malicious prosecution claim also are unpersuasive.  His objections to the

---

[11] To the extent that Roger Vales appears to argue that Preciado improperly delayed bringing this claim, the United States Court of Appeals for the Fourth Circuit has explained that "[d]elay alone without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."  *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  Roger Vales has failed to explain how he was prejudiced by any delay.

increase in compensatory damages fail to show undue delay, bad faith, prejudice or futility.  Furthermore, he presents no evidence to support his assertion that Preciado's intent is to harass Lourdes Vales.  To the extent that Roger Vales appears to argue that amendment would be futile, the argument is without merit.  The fact that Lourdes Vales did not sign the statement of charges does not, alone, relieve her of liability.  *See Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 701 (1981)("A person may be the moving cause of a criminal proceeding even though he does not swear out any criminal charge. One who instigates or aids and assists in a criminal prosecution may be liable regardless of whether he swears out a warrant.") (internal quotation marks omitted).  Moreover, there is a question of fact as to whether the defense of consulting with an attorney is available to them.  Accordingly, Preciado's motion for leave to file a Second Amended Complaint will be granted.

**III. *Vales Action* Motions**

**A.   Standard of Review**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the

26

claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47; *Comet Enter. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 860 (4th Cir. 1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). The court must disregard the contrary allegations of the opposing party. *A. S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.    Preciado's Motion to Dismiss the Valeses' Amended Complaint**

Preciado has filed a motion to dismiss the counts affecting her for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (*Vales Action*, paper 21).  Preciado also argues that the Valeses have failed to plead with specificity allegations needed to support a claim for punitive damages, and the counts do not address the existence of damages.  *Id.* at 5.

**1.    Count III: Constructive Fraud**

The tort of constructive fraud is:

> a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.  Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*The Redemptorists v. Coulthard Servs., Inc.*, 145 Md.App. 116, 153 (2002) (quoting *Scheve v. McPherson*, 44 Md.App. 398, 406 (1979) (internal quotation marks omitted)).  The elements of constructive fraud are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*The Redemptorists*, 145 Md.App. at 153.   Moreover, in pleading fraud, "particular facts must be stated and no mere allegations of fraud are sufficient."   *Jenifer v. Kincaid*, 191 Md. 120, 131 (1948).

The Valeses have failed to plead with particularity the elements of constructive fraud.   The amended complaint alleges a number of statements made by Preciado to Roger and Lourdes Vales, but it is unclear which statement (or statements) form the basis of their claim.   Thus, the allegations are insufficient to give Preciado fair notice of what the Valeses' claim is and the grounds upon which it rests.   Count III, therefore, will be dismissed.

## 2.   Count IV - Intentional Misrepresentation

The elements of intentional misrepresentation (fraud) are the same as the elements for constructive fraud.[12]   "[F]raud cannot be predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future" although "fraud may be predicated on promises made with a present intention not to perform them."   *Levin v. Singer*, 227 Md. 47, 63-64 (1961).

On the first element, the Valeses have been more specific about what alleged statements give rise to the intentional misrepresentation claim: that Preciado (1) made "assurances to the

---

[12] The Maryland courts have stated that constructive fraud is a type of fraud.   *See Scheve v. McPherson*, 44 Md.App. 398, 406 (1979)(stating that "[c]onstructive fraud is nonetheless fraud, a most serious charge").

Plaintiffs that no proceeds would be released by Preciado until all loan documents were fully executed; all processed by the title company and the loan fully secured on the subject real property" and (2) "Harry Down and Dorita Down would sign the necessary documents including, but not limited to the Deed of Trust and the note." (*Vales Action*, paper 15, ¶ 101). On the second element, they further allege that "Preciado knew that the Bethesda property was owned solely by Harry Down and that Dorita Down was not on the title. Preciado also knew that the Plaintiffs would only make the subject loan if they were told and/or were assured that the loan would be fully secured to the subject real property." *Id.* at ¶ 20. On the third element, Plaintiffs allege that "Preciado, William H. Camp, Jr. and/or Dorita Down, all members of Pidegro, LLC, knew that Pidegro, LLC was in need of cash" *id.* at ¶ 9, and "[t]hat Preciado also knew that convincing the Plaintiffs to proceed with making the loan to Dorita Down was essential if the objective of raising the required money for Pidegro, LLC" *id.* at ¶ 21. On the fourth element, they allege that "based on these false representations and assurance, the Plaintiffs, Roger Vales, took out his checkbook and asked Preciado to whom the check should be written." *Id.* at ¶ 27. On the fifth element, they allege that they have suffered harm of at least $350,000. *Id.* at ¶ 72. Thus, the Valeses's claim satisfies the remaining elements. They fail, however, to allege facts that Preciado had no intention of

performing her promises.  They allege no facts, for instance, that she knew the loan proceeds would be released before all loan documents were executed fully, and that she knew there would be no secured interest on the home.  The Valeses also fail to allege that Preciado knew that the Downs would not sign the necessary documents.  Count IV, therefore, will be dismissed.

## 3.   Count V - Unjust Enrichment

The elements of unjust enrichment are (1) a "benefit conferred upon the defendant by the plaintiff;" (2) an "appreciation or knowledge by the defendant of the benefit;" and (3) the "acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000).

Preciado contends that the amended complaint does not allege facts that she received the benefit (i.e., the $350,000) or that it is unjust for her to retain the benefit of the loan proceeds. (*Vales Action*, paper 21, at 15).  The Valeses have alleged sufficient facts for this claim.  The Valeses allege that Pidegro is an entity "in name only" and is an "alter ego" of Preciado, Dorita, and Camp.  (*Vales Action*, paper 15, ¶ 111).  The Valeses delivered a check for $350,000 to Preciado, who gave the check to Down, who deposited it into the checking account for Pidegro.  *Id*. at ¶¶ 112-114.  The Valeses allege that Preciado is a member of

Pidegro LLC and that Pidegro Ltd. was used by Preciado, Camp and Down for holding the money obtained from the Valeses. *Id.* at ¶¶ 120-122.   Thus, the Valeses have alleged sufficient facts to satisfy the first element.[13]   On the second element, the Valeses allege sufficient facts to support the allegation that Preciado, through her involvement in the loan transaction, had an appreciation of or knowledge of that benefit.   On the third element, the Valeses alleged that they believed they were funding a two-year balloon loan secured by real property located at 5802 August Lane, Bethesda, *id.* at ¶ 6; the Valeses wrote the check in the amount of $350,000 payable to Down at the request of Preciado, *id.* at ¶ 28; the Valeses did not receive the lien on the property they were promised, *id.* at ¶¶ 36-37; and Preciado, Down, and Camp have retained the $350,000, *id.* at ¶¶ 109-119.   The Valeses also allege that Pidegro paid Metropolitan and/or Preciado $19,975.33, the amount of the settlement costs, including some fees that should have been paid to BMS Title.   *Id.* at ¶ 70.   Thus, they have alleged sufficient facts with respect to the third element.   Accordingly, Preciado's motion to dismiss Count V will be denied.

---

[13] Preciado argues that "there is no allegation that Dorita Down did not receive fair value in exchange from Pidegro." (Paper 21, at 15-16).   Whether or not Down received fair value in exchange from Pidegro is irrelevant to the question of whether Preciado received an unjust enrichment.

4.    **Count VI - Breach of Fiduciary Duty**

The Valeses have alleged a breach of a confidential duty owed by Preciado to them.   Preciado argues that "[w]hile Maryland recognizes fiduciary relationships between parents and children and guardians and their wards, no such relationship seems to exist in Maryland based on the performance of prior loan transactions." (Paper 21, at 16).   Preciado also asserts that the Valeses have "failed to plead the necessary elements with particularity or identify damages in excess of jurisdictional minimum." *Id.* at 17.

The Court of Appeals has defined breach of fiduciary duty as: "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 192 (1995)(quoting Restatement (Second) of Torts § 874 (1979)).   The tort has the following elements: (1) the existence of a fiduciary relationship, (2) a breach of duty owed by the fiduciary to the beneficiary, and (3) harm resulting from the breach.   *Alleco*, 340 Md. at 192.

The Court of Special Appeals of Maryland has observed that the term "fiduciary relationship" is not clearly defined and that "Maryland case law suggests that the term is left deliberately vague to avoid a too narrow definition, excluding circumstances from which a fiduciary relation might spring." *Travel Comm., Inc.*

33

*v. Pan Am. World Airways, Inc.*, 91 Md.App. 123, 162 (1992).  The

Court of Special Appeals explained further:

> A "fiduciary" or confidential relation, when
> used in the same connection, exists "in all
> cases where there has been a special
> confidence reposed in one who in equity and
> good conscience is bound to act in good faith
> and with due regard to the interest of the one
> reposing the confidence.  The rule embraces
> both technical fiduciary relations, and those
> informal relations which exist wherever one
> man trusts in and relies on another; the
> origin of the confidence reposed is
> immaterial." *Anderson v. Watson*, 141 Md. 217,
> 234, 118 A. 569 (1922) (quoting *Highberger v.
> Stiffler*, 21 Md. 338 (1864); *Peoples v. Ault*,
> 128 Md. 401, 97 A. 711 (1916)).  The Court of
> Appeals in *Gerson v. Gerson*, 179 Md. 171,
> 177-78, 20 A.2d 567 (1941) indicated that:
>
> > In *Chase v. Grey*, [134 Md. 619, 623
> > (1919)] we said: " . . . 'Courts of
> > equity have carefully refrained from
> > defining the particular instance of
> > fiduciary relations in such a manner
> > that other and perhaps new cases
> > might be excluded.  It is well
> > settled by an overwhelming weight of
> > authority that the principle extends
> > to every possible case in which a
> > confidential relation exists as a
> > fact, in which there is confidence
> > reposed on one side, and the
> > resulting superiority and influence
> > on the other.  The relation and
> > duties involved in it need not be
> > legal; it may be moral, social,
> > domestic, or merely personal.'"

*Travel Comm., Inc.*, 91 Md.App. at 162.  The Valeses have alleged

sufficient facts with respect to the existence of a fiduciary

relationship.  Roger and Lourdes Vales allege that Preciado gained

their confidence by consummating two prior loans on their behalf,

34

they relied upon Preciado to maintain control of the $350,000 check they gave her, and they relied on her assurances that no funds would be released until the obligation was secured fully to the Bethesda property.  (*Vales Action*, paper 15,  ¶¶ 125-127).  The Valeses allege that Preciado breached that duty by failing to maintain control of the check even though the loan was not secured properly.  Finally, they allege that they suffered damages because the $350,000 check cleared but they did not receive the security interest in the Bethesda property that was promised to them.  *Id*. at ¶ 72.  Because the Valeses have alleged sufficient facts to state a claim, Preciado's motion to dismiss this count will be denied.

**5.   Count VII - Civil Conspiracy**

The Valeses allege that Preciado, Down, and Camp entered into a conspiracy to wrongfully deprive the Valeses of their $350,000 "and/or their secured interest located at the Augusta Lane property in Bethesda, Maryland."   (*Vales Action*, paper 15, ¶ 131). "[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,  336 Md. 635, 645 (1994).  The Valeses have not identified the underlying tort that would support a conspiracy claim, and therefore, this count will be dismissed.

**6.    Count VIII - Injunctive Relief**

The Valeses seek an injunction prohibiting Preciado, Down, and Camp from "using, transferring, compromising or from otherwise spending any of the Plaintiffs' funds pending further order of the Court." (*Vales Action*, paper 15, ¶ 140).   They also ask for an order directing Pidegro LLC to deposit the $350,000 into a court registry and an order directing Preciado to deposit in the court registry money Preciado received related to the loan transaction. *Id*. at ¶¶ 140, 141, 142.   Preciado asserts that this count should be dismissed because the Valeses failed to plead all of the required elements.   (Paper 21, at 5).   Injunctive relief is not, however, a cause of action, but rather a remedy.   Because at least one of the Valeses' other claims has survived the motion to dismiss, Preciado's motion to dismiss Count VIII will be denied.

**7.    Punitive Damages**

Preciado argues that the Valeses have failed to plead with specificity the allegations needed to support a claim for punitive damages, which the Valeses seek in Counts IV and VII.   A plaintiff seeking punitive damages for a tort must "allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with actual malice." *Scott v. Jenkins*, 345 Md. 21, 37 (1997).   The Valeses have failed to plead sufficient facts.   They allege generally that Preciado acted "with deliberate wrongdoing, evil motive and with ill will" (*Vales Action*, paper 15,

¶ 21); that her conduct was motivated by "ill will, fraud and/or an evil motive or purpose in that it was essential to cause the Plaintiffs to believe Defendant or the loan and obtaining the $350,000.00 from the Plaintiffs would fail" *id*. at ¶ 104; and that "each of the Defendants [sic] actions and/or conduct was motivated by ill will, fraud, intent to injure and/or evil motive or purpose in their effort to improperly obtain the Plaintiffs' monies" *id*. at ¶ 135. Other than these conclusory assertions, Roger and Lourdes Vales have failed to allege any facts to support these assertions that Preciado acted with malice.

Counts IV and VII are being dismissed without prejudice. If Roger and Lourdes Vales chose to replead these claims, any further amendments that attempt to seek punitive damages must provide the specific allegations that are needed to support a claim for punitive damages.

**8.   Damages**

Preciado contends that none of the counts sufficiently addresses the existence of damages suffered by Roger and Lourdes Vales and that they have not pleaded the minimum amount required for diversity jurisdiction. (*Vales Action*, paper 21, at 17).

> Plaintiffs assert that they made a loan for a period of years in the amount of $350,000 and that the loan was to be secured but that Dorita Down could not provide the requested security.
> Plaintiffs do not allege that the promissory note with Defendant Dorita Down has

37

> come due or that they have not been paid
> monthly payments by Defendant Dorita Down.

(*Vales Action*, paper 21, at 17).  Preciado misreads the amended complaint.  Roger and Lourdes Vales allege that "the Plaintiffs are now in a position where there [sic] $350,000 has been wrongfully misappropriated; no secured interest in real property has been obtained contrary to the assertions and/or representations of the Defendants and Plaintiffs have incurred additional costs, expenses and fees." (*Vales Action*, paper 15, ¶ 72).  Thus, the Valeses have alleged damages of at least $350,000.  Moreover, this is sufficient to allege the minimum of $75,000 needed for diversity jurisdiction.

C.   **Preciado's Motion to Dismiss Cross-Claims Filed by Down Against Her**

Preciado has filed a motion to dismiss the cross-claims filed by Down against her on the grounds that Down has failed to state a claim on which relief may be granted and the court lacks subject matter jurisdiction.   (Paper 37, 49).   Preciado also argues generally that Down fails to allege facts evidencing money damages and such allegations are necessary for diversity jurisdiction.  *Id.* at 11.

1.   **Subject Matter Jurisdiction**

Down responds to Preciado's argument that she must allege monetary damages to support diversity jurisdiction by asserting that the court may exercise supplemental jurisdiction over her

claims because her claims are factually tied to the claims in the original action brought by the Vales.  (Paper 43, at 7).

Supplemental jurisdiction provides that "[e]xcept as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).   Furthermore, 28 U.S.C. § 1367(b) provides that:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

The same transaction or occurrence test that is used for asserting jurisdiction over a counterclaim is used with respect to cross-claims.  *See Wheeling Downs Race Track & Gaming Ctr. v. Kovach*, 226 F.R.D. 259, 262 (N.D.W.Va. 2004); *Kirkcaldy v. Richmond County Bd. of Educ.*, 212 F.R.D. 289, 295 (M.D.N.C. 2002).  This inquiry involves the following questions: "(1) 'Are the issues of

fact and law raised in the complaint and cross-claim largely the same?' (2) 'Will substantially the same evidence support or refute the complaint as well as the cross-claim?' and (3) 'Is there any logical relationship between the complaint and the cross-claim?'" *Wheeling Downs Race Track*, 226 F.R.D. at 262 (quoting *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988)); *see also Kirkcaldy,* 212 F.R.D. at 295 (same).   If the court has jurisdiction over the cross-claim, the plaintiff need not allege specific monetary damages in order to satisfy the jurisdictional amount requirement. *See, e.g., Schwab v. Erie Lackawanna R.R. Co.,* 438 F.2d 62, 65 (3rd Cir. 1971)(citing 1 Moore's Federal Practice, ¶ 0.90, and cases); *Coastal Air Lines v. Dockery,* 180 F.2d 874, 877 (8th Cir. 1950). *See also* 14B Wright, et al., *Federal Practice and Procedure*, § 3706, at 204 (3rd ed. 1998) (stating that "cross claims need not independently satisfy the jurisdictional amount requirement").

Down correctly asserts that § 1367(b) does not apply to bar her cross-claim because her claims do not involve a third-party complaint or require joinder or intervention by anyone who is not already part of the original lawsuit.   In addition, Down's cross-claim satisfies the same transaction test in that the issues of fact and law are the same, the claims brought by Roger and Lourdes Vales would appear to involve the same evidence, and there is a logical relationship between the Valeses' complaint and Down's cross-claim.   Because the court has jurisdiction over the cross-

claim, Down need not allege a specific monetary damage against Preciado, and Preciado's argument that Down must do so is without merit.

**2.   Count I - Contribution/Indemnification**

Down seeks contribution/indemnification from Preciado and Camp if it is determined that she is liable to Roger and Lourdes Vales for acts caused in whole or in part by Preciado and Camp, including claims for fraud, gross negligence and/or willful misconduct and breach of fiduciary duty.

"[C]ontribution is the distribution of loss among culpable parties in accordance with their proportionate shares.  It is defined as 'a payment made by each, or by any, or several having a common interest of liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'"  *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 280 (quoting 5A MLE Contribution § 2 at 434 (1982)).  The right to seek contribution is based on Md. Code Ann., Courts & Jud. Proc. § 3-1402(b).

By contrast, a right of indemnification arises by express agreement or by implication. *Hanscome v. Perry*, 75 Md.App. 605, 615 (1988).  An implied right of indemnification can, in turn, arise in two circumstances: (1) "implied contract theory," based on the special nature of a contractual relationship between parties and (2) "implied in law," based on a tort-based right "when there

is a great disparity of fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." *Id.* (quoting *Peoples' Dem. Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2nd Cir. 1986)). Because Down alleges no express agreement, she appears to seek indemnification of the type implied in law. Implied in law indemnification may exist where "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another." *Hanscome*, 75 Md.App. at 615 (quoting Restatement of Restitution § 96).

The court is dismissing several of the claims brought by Roger and Lourdes Vales with the opportunity to re-plead the allegations. Until the complaint is settled, it is premature to consider whether Down has stated a claim for either contribution or indemnification, and the motion to dismiss will be denied without prejudice.

**2.   Count II - Fraud**

Preciado contends that Down has failed to allege sufficient facts with specificity to satisfy all elements of a fraud claim. Down alleges that Preciado communicated to her and others "false statements of material fact relating to Cross-plaintiff/Co-defendant Down, including but not limited to statements made orally and in writing (including but not limited to the loan application) . . ." (*Vales Action*, paper 30, ¶ 13). This is insufficient to provide notice to Preciado as to what false representations

42

allegedly were made by Preciado that give rise to a claim.  Down's allegations as to the remaining elements are conclusory and completely lacking in any reference to factual allegations. Accordingly, Preciado's motion to dismiss Count II will be granted.

**3.   Count III - Abuse of Process**

The Court of Appeals has held that the tort of abuse of process "occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law." *One Thousand Fleet Ltd. P'ship*, 346 Md. 29, 38 (1997)(quoting *Krashes v. White*, 275 Md. 549, 555 (1975)).  The elements of an abuse of process claim are: (1) "that the defendant wilfully used process after it has issued in a manner not contemplated by law;" (2) "that the defendant acted to satisfy an ulterior motive;" and (3) "that damages resulted from the defendant's perverted use of process." *One Thousand Fleet*, 346 Md. at 38. "A bad motive alone is not sufficient to establish an abuse of process. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required . . . ."  *Id.*(internal quotation marks omitted).  In addition, "[a] cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an

arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *Id.* at 45.[14]

Here, Down has failed to allege that she was arrested unlawfully or that her property was seized unlawfully.  She simply alleges that she suffered "substantial damages . . . including but

---

[14] In Maryland, "malicious use of process" involves "malicious prosecution of a civil claim" while "abuse of process" can apply to either civil or criminal charges.  *One Thousand Fleet Ltd. P'ship*, 346 Md. at 36.  The Court of Appeals has explained the difference between the two:

> An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause.

*One Thousand Fleet Ltd. P'ship,* 346 Md. at 39.  Both malicious use of process and abuse of process include the element that the plaintiff suffered an arrest, seizure or other "special injury." *See id*, at 43-44, 45.  In the context of civil abuse of process, the Court of Appeals observed that the plaintiff must suffer more than an injury to his or her business or to his or her name.

> Any unfounded suit may result in such injury; but it will hardly be seriously contended that where there has been no wrongful deprivation of liberty or no illegal seizure of property, that each unfounded suit is to be treated as such an abuse of the process of the law as will sustain action against the one who instituted it.

*Id.* at 46 (quoting *Bartlett v. Christhilf*, 69 Md. 219, 231 (1888)).

not limited to economic damages and non-economic damages, i.e. personal injury." (*Vales Action*, paper 30, ¶ 20).  Accordingly, Down has failed state a claim for abuse of process, and this count will be dismissed.

In sum, Preciado's motion to dismiss Down's cross-claims (Counts II and III) will be granted.[15]

## IV. Conclusion

For the reasons that follow, Roger Vales' motion for summary judgment will be denied, Preciado's motion for leave to file an amended complaint will be granted, Preciado's motion to dismiss the complaint brought by Roger and Lourdes Vales will be granted in part and denied in part, and Preciado's two motions to dismiss the cross-claims filed by Down against her will be granted in part. The court will also order that relevant papers from 05-2339 be electronically refiled in 05-3110.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[15] Down filed a second cross-claim against Preciado and Camp that is duplicative of the cross-claim in paper 37.  Preciado then filed another motion to dismiss the duplicative cross-claim. (Papers 46 and 49).