IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER VALES, et al.

    v.                       : Civil Action No. DKC 2005-3110

ALMA PRECIADO, et al.

                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) the motion
of Roger Vales and Lourdes Vales for leave to file a third amended
complaint (paper 103); (2) the motion of Alma Preciado to dismiss
Dorita Down's amended cross claim (paper 104); (3) the motion of
Roger Vales and Lourdes Vales to strike the appearance of counsel
(papers 144 and 146); and (4) the second motion of Roger and
Lourdes Vales to strike the appearance of counsel (paper 163).[1]
The issues are fully briefed and the court now rules, no hearing
being deemed necessary.  Local Rule 105.6.  For the reasons that
follow, the motions for leave to file a third amended complaint and
to dismiss the amended cross claim will be granted in part and
denied in part, and the motions to disqualify counsel will be
denied.

---

[1] Unfortunately, the undersigned deferred resolution of these
motions while the discovery situation was being monitored by Judge
Connelly, without realizing that the proposed amendment would add
additional parties and claims.  Nevertheless, it will be analyzed
as it was presented last fall.  In addition, a motion for summary
judgment has more recently been filed.  It will be resolved in a
separate opinion.

**I.    Background**

The facts and background of this case are stated in full in earlier memoranda.    Briefly, Roger and Lourdes Vales ("Plaintiffs"), residents of Florida, agreed to provide funding for a loan to Dorita Down ("Down") on the basis of her loan application with Alma Preciado d/b/a Metropolitan Financial Services.    The loan, in the amount of $350,000, was to be secured by real estate in Bethesda, Maryland.    Plaintiffs assert that although no action was taken to secure the loan, Preciado nonetheless released their check to Down.    The check was endorsed by Down and paid over to Pidegro LLC, an entity whose sole members included Down, Preciado, and William Camp, Jr.    Plaintiffs maintain that the $350,000 check was deposited into the Citibank account of Pidegro LLC on April 6, 2005.

Preciado, for herself and Metropolitan Financial Services and for the claimed benefit of Roger and Lourdes Vales, filed a complaint in the Circuit Court for Montgomery County, Maryland, against Down, Camp, Pidegro LLC, and Harry Down, Down's husband, in connection with the loan transaction.    The defendants in that action removed the case to this court based on diversity jurisdiction, *see Preciado v. Vales*, Civil Action No. DKC 2005-2339.    On November 16, 2005, Roger and Lourdes Vales brought suit in this court, against Preciado, Down, Camp, Pidegro LLC, and

Pidegro Ltd., alleging fraud in connection with the $350,000 loan provided by them. *See Vales, et al. v. Preciado, et al.*, Civil Action No. DKC 2005-3110. The cases were consolidated on April 6, 2006.

The specific procedural background for each of the motions will be set forth in each subsection.

## II.  Motion for Leave to File Third Amended Complaint

On December 22, 2005, Preciado filed a motion to dismiss Plaintiffs' complaint. (Paper 10). On January 9, 2006, Plaintiffs filed an opposition to the motion to dismiss, which the court construed as a motion for leave to amend the complaint ("first amended complaint"). (Paper 15). The first amended complaint listed the following causes of action: I. Intentional Misrepresentation (Down); II. Deceit (Down); III. Constructive Fraud (Preciado); IV. Intentional Misrepresentation (Preciado); V. Unjust Enrichment (Down, Preciado, Camp, Pidegro LLC, and Pidegro Ltd.); VI. Breach of Fiduciary Duty (Preciado); VII. Civil Conspiracy (Down, Preciado, Camp, Pidegro LLC, and Pidegro Ltd.); and VIII. Injunctive Relief (Preciado, Down, and Camp). On January 30, 2006, Preciado filed a motion to dismiss the first amended complaint. (Paper 21). On July 28, 2006, by Order and accompanying Memorandum Opinion, the court granted Preciado's motion to dismiss the claims for constructive fraud, intentional misrepresentation, and civil conspiracy, counts III, IV, and VII.

(Papers 60 & 61).   The motion to dismiss was denied as to the claims for unjust enrichment and breach of fiduciary duty, counts V and VI.   (*Id*.).

On August 2, 2006, Plaintiffs filed a motion for leave to file an amended complaint ("second amended complaint"). (Paper 63).   On August 21, 2006, Preciado filed a response in opposition. (Paper 78).   On September 18, 2006, a status hearing was held and the court denied without prejudice the motion of Plaintiffs to file the second amended complaint because the motion was not filed in accordance with the Local Rules.[2] (Hr'g Tr., Sept. 18, 2006, at 10).   The court also instructed counsel that any further motions for leave to amend the complaint should contain some justification for the proposed amendments. (*Id*. at 12).

On September 28, 2006, Roger and Lourdes filed a motion for leave to file an amended complaint ("third amended complaint").[3] (Paper 103).   This motion is presently before the court.   In the third amended complaint, Plaintiffs added facts to surviving claims, attempted to resurrect dismissed claims, and added entirely new claims with new defendants.   The proposed third amended

---

[2] Local Rule 103.6 states that whenever a party files a motion for leave to amend, attached to the motion should be a clean amended complaint and a version highlighting the proposed changes.

[3] Although Plaintiffs titled paper 103, "motion for leave to file second amended complaint," it is the third time they have attempted to amend their original complaint, and for consistency, the court will refer to it as the "third amended complaint."

complaint would add Universal Business Systems, Inc. and Carlos E. Vasquez as defendants, as well as present the following claims: I. Intentional Misrepresentation (Down), II. Deceit (Down), III. Constructive Fraud (Preciado), IV. Intentional Misrepresentation (Preciado), V. Unjust Enrichment (Preciado, Down, Camp, Pidegro LLC, and Pidegro Ltd.), VI. Breach of Fiduciary Duty (Preciado), VII. Civil Conspiracy (Preciado, Vasquez, Down, Pidegro LLC, Pidegro Ltd., Camp, and Universal Business Systems, Inc.), VIII. Claim for Injunctive Relief, IX. To Avoid Fraudulent Transfers (Universal Business Systems, Inc., Camp, Pidegro LLC, Preciado, and Vasquez), X. Claim for Injunctive Relief (Camp and Universal Business Systems, Inc.), XI. Claim for Injunctive Relief (Preciado and Vasquez), and XII. Claim for Injunctive Relief (Down).

As justification for the proposed amendments, Plaintiffs state that the third amended complaint proposes to remedy the deficiencies noted by the court in granting Preciado's motion to dismiss. (Paper 103 ¶ 7). The third amended complaint also includes new factual allegations based upon information that was obtained subsequent to the filing of the first amended complaint.[4] (*Id.*). Preciado filed an opposition to this motion arguing that Plaintiffs have failed to provide sufficient justification for

---

[4] On January 18, 2007, Plaintiffs submitted a memorandum which purports to be written by Down, addressed to Preciado and Camp, dated April 8, 2005, and requested that the memorandum be attached and incorporated into the third amended complaint. (Paper 130).

their proposed amendments.   (Paper 112).   Down joins Preciado's opposition on the ground that Plaintiffs "have had ample time and opportunity to file an amended complaint that conforms and adheres to the Rules."  (Paper 113).

Fed.R.Civ.P. 15(a) requires that "leave [to amend] shall be freely given when justice so requires."  The Supreme Court has declared that "this mandate is to be heeded" and has identified the following factors for courts to consider when evaluating a Rule 15(a) motion: (i) undue prejudice to opposing party, (ii) undue delay, (iii) bad faith or dilatory motive, and (iv) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend may be denied when the amendment would be futile.  *See Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002).  A proposed amendment would be futile if the facts alleged fail to state a claim upon which relief could be granted.   *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001); *Curtis v. Pracht*, 202 F.Supp.2d 406, 420 (D.Md. 2002).

Analyzing the motion as it was presented last fall, there is no indication that the opposing parties would suffer undue prejudice or that the third amended complaint was filed after an undue delay or with bad faith or dilatory motive on the part of the Plaintiffs.  Thus, the court must determine whether the causes of action, as amended, state a claim upon which relief could be granted.  If the amended causes of action do not state a claim,

then the proposed amendments would be futile, and leave to amend

should be denied.  *See GE Inv. Private Placement Partners II*, 247

F.3d at 551.

## A.  Resurrected Claims

Plaintiffs attempt to resurrect counts III, IV and VII.

### 1. Count III - Constructive Fraud

The tort of constructive fraud is:

> a breach of legal or equitable duty which,
> irrespective of the moral guilt of the fraud
> feasor, the law declares fraudulent because of
> its tendency to deceive others, to violate
> public or private confidence, or to injure
> public interests.  Neither actual dishonesty
> of purpose nor intent to deceive is an
> essential element of constructive fraud.

*The Redemptorists v. Coulthard Servs., Inc.*, 145 Md.App. 116, 153

(2002) (quoting *Scheve v. McPherson*, 44 Md.App. 398, 406 (1979)

(internal quotation marks omitted)).  The elements of constructive

fraud are:

> (1) that the defendant made a false
> representation to the plaintiff, (2) that its
> falsity was either known to the defendant or
> that the representation was made with reckless
> indifference as to its truth, (3) that the
> misrepresentation was made for the purpose of
> defrauding the plaintiff, (4) that the
> plaintiff relied on the misrepresentation and
> had the right to rely on it, and (5) that the
> plaintiff suffered compensable injury
> resulting from the misrepresentation.

*The Redemptorists*, 145 Md.App. at 153.  Moreover, in pleading

fraud, "particular facts must be stated and no mere allegations of

7

fraud are sufficient." *Jenifer v. Kincaid*, 191 Md. 120, 131 (1948).

Previously, this court held that Plaintiffs failed to plead with particularity the elements of constructive fraud because the first amended complaint alleged a number of statements made by Preciado to Plaintiffs, but it was unclear which statement (or statements) formed the basis of their claim.

On the first element, Plaintiffs assert that Preciado made the following false representations to them in February and March, 2005: (1) that the loan proceeds would be fully secured by real property on Augusta Lane in Bethesda, Maryland; (2) that the loan documents would be signed by both Dorita and Harry Down, and (3) that no proceeds would be released until all the loan documents were executed and processed by the title company, BMS Tile. (Paper 103 ¶¶ 105, 109).

On the second element, they allege that Preciado knew that Dorita Down was not listed on the deed and that Harry Down "was never going to be a borrower and . . . was never going to subject his real property on Augusta Lane as collateral for the loan[.]" (*Id.* ¶¶ 96-97). Plaintiffs further assert that Preciado knew that Harry Down had no information or knowledge about the loan transaction, and therefore she knew that the loan proceeds would be released by her to Dorita Down before all the loan documents were fully executed and that there would never be a secured interest on

8

the real property because the loan documents could not be executed without Harry Down, a necessary party. (*Id*. ¶ 121).

On the third element, Plaintiffs assert that Preciado's and Down's primary objective of engaging in the loan transaction was to obtain funds for Pidegro LLC. (*Id*. ¶ 99). Plaintiffs further allege that Preciado represented that the loan proceeds were intended for the use and/or benefit of Down, but that Preciado knew at all times that the loan proceeds were ultimately intended for the benefit of Pidegro LLC and its members. (*Id*. ¶ 104).

On the fourth element, they allege that "based on these false representations and assurance, the Plaintiff, Roger Vales, with Plaintiff, Lourdes Vales, present, took out their checkbook and asked Preciado to whom the check should be written." (*Id*. ¶ 107).

Finally, on the fifth element, Plaintiffs allege compensable injuries in the amount of $350,000. (*Id*. ¶ 127).

Plaintiffs have alleged sufficient facts to state a claim for constructive fraud. Thus, the proposed amendments would not be futile and they will be granted leave to amend Count III.

### 2.    Count IV - Intentional Misrepresentation

The elements of intentional misrepresentation (fraud) are the same as the elements for constructive fraud.[5] "[F]raud cannot be

---

[5] The Maryland courts have stated that constructive fraud is a type of fraud. *See Scheve v. McPherson*, 44 Md.App. 398, 406 (1979)(stating that "[c]onstructive fraud is nonetheless fraud, a most serious charge").

predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future" although "fraud may be predicated on promises made with a present intention not to perform them." *Levin v. Singer*, 227 Md. 47, 63-64 (1961).

In the Memorandum Opinion of July 28, 2006, this court held that Plaintiffs alleged facts sufficient to satisfy the five elements of fraud, but dismissed this claim because they failed to allege facts that Preciado had no intention of performing her promises. (Paper 60, at 30-31).

Plaintiffs seek to amend the complaint to assert that "Preciado had no intention of fulfilling these representations and assurances which she had given to the Plaintiffs solely to obtain their trust and confidence[.]" (Paper 103 ¶¶ 105, 129). They state in more detail:

> Preciado knew that the subject loan proceeds would be released by her to Dorita Down before all loan documents were fully executed and Preciado knew, even from the outset when she first communicated with the Plaintiffs, that there would be no secured interest on the subject real property. Preciado in fact knew that all necessary loan documents would never be executed since Harry Down, a necessary party to the Deed of Trust, would never agree to sign the Deed of Trust nor would he or did he ever agree to have his real property used as collateral for the subject loan transaction.

(*Id.* ¶¶ 120-121, 129). In the third amended complaint, Plaintiffs correct the earlier deficiency and allege specific facts that Preciado had no intention of performing her promises. Thus, the

proposed amendment is not futile and leave to amend count IV will
be granted.

### 3.   Count VII - Civil Conspiracy

Plaintiffs previously alleged that Preciado, Down, and Camp,
entered into a conspiracy to wrongfully deprive them of their
$350,000 "and/or their secured interest located at the Augusta Lane
property in Bethesda, Maryland."  Noting that "conspiracy is not a
separate tort capable of independently sustaining an award of
damages in the absence of other tortious injury to the plaintiff,"
*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,
336 Md. 635, 645 (1994), the court dismissed this claim because
Plaintiffs had not identified the underlying tort that would
support a conspiracy claim.  (Paper 60, at 35).

The third amended complaint seeks to add Carlos Vasquez and
Universal Business Systems to this claim and alleges that the
Defendants, Preciado, individually and d/b/a Metropolitan Financial
Services, Vasquez, individually and t/a Metropolitan Financial
Services, Down, Pidegro LLC, Pidegro Ltd., Camp, and Universal
Business Systems, engaged in a civil conspiracy to defraud
Plaintiffs.

Under Maryland law, a civil conspiracy has been defined as:

> "[A] combination of two or more persons by an
> agreement or understanding to accomplish an
> unlawful act or to use unlawful means to
> accomplish an act not in itself illegal, with
> the further requirement that the act or the
> means employed must result in damages to the

11

> plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24
> (2005) (quoting *Green v. Wash. Sub. San.
> Comm'n*, 259 Md. 26, 221 (1970)). The
> plaintiff must prove an unlawful agreement,
> the commission of an overt act in furtherance
> of the agreement, and that as a result, the
> plaintiff suffered actual injury. *Id.* at 25.
> The unlawful agreement is not actionable by
> itself; rather, the "[t]ort actually lies in
> the act causing the harm" to the plaintiff.
> *Id.* Thus, civil conspiracy is not "capable of
> independently sustaining an award of damages
> in the absence of other tortious injury to the
> plaintiff." *Id.*

*Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 485 (2006) (parallel

citations omitted). "Conspiracy may be shown by inferences drawn

from the nature of the acts complained of, the individual and

collective interests of the alleged conspirators, the situation and

relation of the parties, their motives and all the surrounding

circumstances preceding and attending the culmination of the common

design." *Daugherty v. Kessler*, 264 Md. 281, 292 (1972). "Once the

elements of the conspiracy are set forth, a court must look to the

facts alleged by the plaintiff to determine whether each defendant

has been clearly identified and linked to the conspiracy."

*Equitable Bank v. Finn*, 671 F.Supp. 374, 378 (D.Md. 1987).

Plaintiffs have failed to allege specific facts sufficient to

show that Defendants entered into an agreement to obtain the loan

proceeds in a fraudulent manner. The assertion that "Defendants,

at some time prior to effectuating the loan transaction, entered

into a conspiracy whereby they intentionally and with knowledge

sought to improperly and wrongfully deprive the Vales of their

$350,000.00 . . ." is wholly conclusory and insufficient to state a claim. Plaintiffs have not pled with particularity the elements of civil conspiracy, specifically that the named defendants entered into an agreement to use unlawful means to obtain the loan proceeds from Plaintiffs. The proposed amendments would be futile and leave to amend count VII will be denied.

**B. New Claims**

**1. Count IX - To Avoid Fraudulent Transfers**

The third amended complaint seeks to assert a new claim, Count IX - To Avoid Fraudulent Transfers, against Universal Business Systems, Inc., Camp, Pidegro LLC, Preciado, and Vasquez, pursuant to 11 U.S.C. §§ 544, 548, and Md. Code Ann., Com. Law §§ 15-201 *et seq.*

Chapter 11 of the United States Code, sections 544 and 548 give "a bankruptcy trustee, or the debtor in possession in a chapter 11 case (who has the rights and powers of a trustee), certain extraordinary powers to avoid transfers and transactions that occurred before the bankruptcy filing." Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 7-1100 (15th ed. 2006). "11 U.S.C. § 544 does not itself create a substantive cause of action. Rather, it merely allows a trustee in certain circumstances to assume causes of action under a state's law." *Field v. Montgomery County (In re Anton Motors, Inc.)*, 177 B.R. 58, 64 (Bankr.D.Md. 1995). Here, it appears Plaintiffs seek to use §

13

544 to state a claim under Maryland's Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Com. Law §§ 15-201 - 214.  Roger and Lourdes Vales are not bankruptcy trustees, nor are they debtors in possession in a chapter 11 case, thus they are not entitled to bring a cause of action under either section of the bankruptcy code.

It is unclear whether Plaintiffs intend to assert an independent state law claim under MUFCA.  Count IX is titled "To Avoid Fraudulent Transfers," and MUFCA contains a section prohibiting conveyance with intent to defraud: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."  Md. Code Ann., Com. Law § 15-207. It is possible Plaintiffs intend to assert a claim under Maryland law, separate from the federal bankruptcy claims.  To maintain a suit pursuant to MUFCA, "the plaintiff needs to allege that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets." *Dixon v. Bennett*, 72 Md. App. 620, 623 n.2 (1987), *cert. denied*, 311 Md. 557 (1988).  "The creditor's right to bring suit under MUFCA is not related to whether the debtor has filed a bankruptcy petition." *Id.*  A creditor is defined as "a person who has any claim, whether matured

or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."  Md. Code Ann., Com. Law § 15-201(d).

Plaintiffs have failed to allege facts that a debtor-creditor relationship existed with Preciado, Vasquez, Camp, Universal Business Systems, and/or Pidegro LLC, the defendants named in this count.  The factual allegations indicate that a creditor-debtor relationship existed between Plaintiffs and Down, but not between Plaintiffs and any other defendant.  The proposed amendment would be futile and leave to amend count IX will be denied.

**2. Counts X, XI, and XII - Claims for Injunctive Relief**

Injunctive relief is a remedy rather than a separate cause of action.  Nevertheless, Plaintiffs seek to add three new claims for injunctive relief.

In count X, Roger and Lourdes Vales seek to enjoin Camp and Universal Business Systems from "spending; transferring or in any way reducing the money balance of their accounts below the balance which exists at the time of granting the injunction."  (Paper 103 ¶ 260A).  In count XI, they seek the same injunction against Preciado, individually and d/b/a Metropolitan Financial Services, and Vasquez, individually and d/b/a Metropolitan Financial Services.  In count XII, they seek the same injunction against Down.

Because Plaintiffs will be allowed to proceed with at least one other claim against Camp, Universal Business Systems, and Down,

they will be allowed to amend the complaint to add counts X and
XII.   Plaintiffs sought leave to add Vasquez as a defendant in
counts VII and IX.   For the reasons stated previously, however,
they will not be permitted to amend these claims.   Thus, Plaintiffs
have no claim against Vasquez and they may not seek injunctive
relief against him.   Therefore, Plaintiffs will be permitted to
amend the complaint to add count XI only as it relates to Preciado.

## III. Motion to Dismiss Amended Cross Claim

Down filed a cross claim against Camp and Preciado on March
24, 2006.   (Paper 30).   Preciado moved to dismiss Down's cross
claim on April 17, 2006, on the ground that the court lacked
subject matter jurisdiction and because Down had failed to state a
claim upon which relief could be granted.   (Paper 37).   By Order
and accompanying Memorandum Opinion, on July 28, 2006, the court
held that it had subject matter jurisdiction, and granted
Preciado's motion to dismiss based on failure to state a claim.
(Papers 60 & 61).   Down was given 15 days to file any amendments.
(*Id*.).   On August 14, 2006, Down moved for an extension of time to
amend her cross claim.   (Paper 72).   Her motion was granted the
following day, and she was given until August 25, 2006 to file an
amended cross claim.   (Paper 73).   On August 25, 2006, Down moved
for a second extension of time to amend her cross claim.   (Paper
86).   That motion has not yet been ruled upon.   On September 8,
2006, Down filed an amended cross claim against Preciado.   (Paper

94).  On September 18, 2006, Down submitted the required redlined version of her amended cross claim, pursuant to Local Rule 103.6(c).  (Paper 99).

Down's amended cross claim asserts three claims against Preciado: Count I, contribution/indemnification; Count II, fraud; and Count III, abuse of process.  (Paper 94).  Preciado moves to dismiss Down's amended cross claim because it is untimely and fails to plead the elements of her claims with particularity.[6]  (Paper 104).

## A. Contribution/Indemnification

In Count I, Down seeks contribution and indemnification from Preciado if it is determined that she is liable to Roger and Lourdes Vales for acts caused in whole or in part by Preciado, including claims for fraud, gross negligence, willful misconduct, and breach of fiduciary duty.  Down asserted the same claim against both Preciado and Camp in her first cross-claim.

In the Memorandum Opinion issued on July 28, 2006, the court held that until the complaint by Roger and Lourdes Vales is settled, it would be premature to consider whether Down has stated a claim for either contribution or indemnification.  (Paper 60, at 42).  Count I was dismissed without prejudice.

---

[6]  Although technically untimely, Down's amended cross claim will be accepted and the court will analyze the motion to dismiss on the merits.

Claims by Roger and Lourdes Vales are pending as stated above in the third amended complaint.  Counts I, II, and V of the third amended complaint state claims against Down, Counts III, IV, V, and VI state claims against Preciado.

"[C]ontribution is the distribution of loss among culpable parties in accordance with their proportionate shares.  It is defined as 'a payment made by each, or by any, or several having a common interest of liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'"  *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 280 (quoting 5A MLE Contribution § 2 at 434 (1982)).  The right to seek contribution is based on Md. Code Ann., Courts & Jud. Proc. § 3-1402(b).

By contrast, a right of indemnification arises by express agreement or by implication.  *Hanscome v. Perry*, 75 Md.App. 605, 615 (1988).  An implied right of indemnification can, in turn, arise in two circumstances: (1) "implied contract theory," based on the special nature of a contractual relationship between parties and (2) "implied in law," based on a tort-based right "when there is a great disparity of fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." *Id.* (quoting *Peoples' Dem. Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2nd Cir. 1986)).  Because Down alleges no express agreement, she appears to seek

indemnification of the type implied in law.   Implied in law indemnification may exist where "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another."   *Hanscome*, 75 Md.App. at 615 (quoting *Restatement of Restitution* § 96).   A claim for indemnification or contribution does not accrue until judgment has been entered against the party seeking indemnification or contribution. *Haupt v. State*, 340 Md. 462, 476 (1995).

While this claim may need to be amended, depending on future events, it does not fail to state a claim.   The motion to dismiss will be denied as to Count I.

### B.   Fraud

Fed.R.Civ.P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other condition of mind of a person may be averred generally."   The word circumstances "is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).   "The purpose of this rule is to provide the defendant fair notice of the basis of plaintiff's claim and to protect defendant's reputation from

groundless accusation of fraud incited by the possibility of an *in terrorem* increment in the settlement value of a lawsuit." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 798 (D.Md. 2002)(internal quotation marks omitted).

Preciado moves to dismiss Count II, arguing that Down failed to plead fraud with particularity.   The following are the alleged misstatements made by Preciado to Down:

> (a) She falsely stated that she successfully had accomplished such loan transactions with Plaintiffs on about seven or eight occasions; (b) she falsely stated that she had truthfully communicated to Plaintiffs that Mrs. Down was not an owner of the home in which she resides with her husband; (c) she falsely stated that it was immaterial whether Mrs. Down was on the title to the home in which she resides with her husband; (d) she falsely stated that it was not necessary for Mrs. Down's name to appear on the title to the home in which she resides with her husband; *et cetera*.

(Paper 94 ¶ 14).

Down has not stated a claim for fraud with adequate specificity because she has failed to provide adequate details about the alleged misrepresentations.   Down does not state the time or place of the statements, and does not identify what was obtained by the alleged misrepresentations, as required by Rule 9(b).   *See Superior Bank, F.S.B.*, 197 F.Supp.2d at 313-14.   Down's allegations as to the remaining elements are conclusory and completely lacking in any factual allegations.   Down has failed to meet the pleading

standard of Fed.R.Civ.P. 9(b) as to her claim for fraud, and it will be dismissed.

**C. Abuse of Process**

"Abuse of process is a tort and occurs when a party has 'wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law.'" *Attorney Grievance Com'n of Md. v. Roberts*, 394 Md. 137, 160 (2006) (quoting *Krashes v. White*, 275 Md. 549, 555 (1975) (citations omitted)).

The Court of Appeals of Maryland recently explained the tort of abuse of process.

> The essential elements of the abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 511, 471 A.2d 297, 311 (1984) (citation omitted). "A bad motive alone is not sufficient to establish an abuse of process." *One Thousand Fleet Ltd. Partnership v. Guerriero*, 346 Md. 29, 38, 694 A.2d 952, 956 (1997). In order to establish an abuse of process, there must be a definite act or threat that is not authorized by the process "or aimed at an objective not legitimate in the use of the process [.]" *Id.* (quoting W. Keeton, *Prosser & Keeton on the Law of Torts* § 121, at 898 (5th ed. 1984)). In *Capitol Elec. Co. v. Cristaldi*, 157 F.Supp. 646 (D.Md. 1958), the United States District Court for the District of Maryland stated that as abuse of process requires "a perversion of

21

> court process to accomplish some end which the
> process was not designed to accomplish; it
> does not arise from a regular use of process,
> even with ulterior motives." *Id.* at 648
> (citation omitted).

*Roberts*, 394 Md. at 160-61.  "The mere issuance of the process itself . . . is not actionable, even if it is done with an 'ulterior motive' or 'bad intention.'"  *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 530 (2004) (quoting *Herring v. Citizens Bank and Trust Co.*, 21 Md.App. 517, 534 (1974)).

In Count III, Down claims that Preciado "willfully used process for an improper purpose to satisfy an ulterior motive of extricating herself from criminal investigation" by filing a complaint in the Circuit Court for Montgomery County, Maryland. (Paper 94 ¶ 20).  Down has failed to allege any specific facts to support her claim.  At best, Down has alleged that Preciado filed the complaint with an ulterior motive.  An ulterior motive or bad intention, without evidence of a perversion of court process, is not sufficient to allege a claim for abuse of process.  *See Roberts*, 394 Md. at 160-61.  Down has failed to state a claim for abuse of process.

The motion to dismiss the amended cross-claim will be denied as to Count I and granted as to Counts II and III.

## IV. Motions to Strike Appearance of Counsel

Plaintiffs filed a motion to strike the appearance of Daniel Willard, Esq., attorney for Preciado, on February 22, 2007 (paper

22

144) and filed a supplement to that motion later that same day (paper 146).   Preciado filed an opposition on March 12, 2007. (Paper 151).   On April 4, 2007, Plaintiffs filed a memorandum that is confusingly titled "Supplement to Vales' Motion to Strike Appearance of Counsel for Alma Preciado," although it was docketed as a reply brief.   (Paper 163).   Paper 163 does not respond to any of the legal arguments raised in Preciado's opposition and, in fact, raises entirely new arguments in support of disqualification of counsel, wholly unrelated to the original motion to strike.[7] The "supplement" will be construed as a second motion to strike the appearance of counsel.   Preciado filed an opposition to the second motion to strike on April 4, 2007.   (Paper 164).

**A.   Standard of Review**

As aptly stated by Judge Andre Davis in *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 750 (D.Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998):

> A motion to disqualify is a "serious matter,"
> *Plant Genetic Systems* [*N.V. v. Ciba Seeds*],
> 933 F.Supp. [514,] at 517 [(M.D.N.C.1996)],
> which must be decided on a case-by-case basis.

---

[7] The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.   *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).   "However, the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances." *Clawson v. FedEx Ground Package System, Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006).   Preciado has responded to the new allegations (paper 164) and the issues will be decided on the merits.

> *See Buckley v. Airshield Corp.*, 908 F.Supp.
> 299, 304 (D.Md. 1995).  This is so because two
> significant interests are implicated by a
> disqualification motion: "the client's free
> choice of counsel and the maintenance of the
> highest ethical and professional standards in
> the legal community." *Tessier [v. Plastic
> Surgery Specialists, Inc.]*, 731 F.Supp. [724]
> at 729 [(E.D.Va.1990)]; *Buckley*, 908 F.Supp.
> at 304.  Nevertheless, "the guiding principle
> in considering a motion to disqualify counsel
> is safeguarding the integrity of the court
> proceedings." *Plant Genetic Systems*, 933
> F.Supp. at 517; *see Hull v. Celanese
> Corporation*, 513 F.2d 568, 572 (2nd Cir. 1975)
> (finding that a party's free choice of counsel
> must yield to "considerations of ethics which
> run to the very integrity of our judicial
> process.").  Thus, this court must not weigh
> the competing issues "with hairsplitting
> nicety but, in the proper exercise of its
> supervisory power over the members of the bar
> and with a view of preventing an appearance of
> impropriety, [this Court] is to resolve all
> doubts in favor of disqualification." *United
> States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th
> Cir. 1977) (internal quotation marks and
> citations omitted); *Rogers v. Pittston Co.*,
> 800 F.Supp. 350, 353 (W.D.Va.1992); *Buckley*,
> 908 F.Supp. at 304.

There is no unalterable procedure for assessing a disqualification

motion.  Some courts state that "the method of conducting the

inquiry is within the discretion of the judge. . . ." *Lefrak v.

Arabian Am. Oil Co.*, 527 F.2d 1136, 1140 (2nd Cir. 1975) (quoted in

*United States v. Philip Morris Inc.*, 312 F.Supp.2d 27, 34 (D.D.C.

2004), *vacated in part on other grounds*, 220 F.R.D. 109 (2004)).

Judge Kessler also observed:

> [T]he courts have focused on the need for an
> adequate record for appellate review, rather
> than any precise form or scope of discovery.

24

> *See General Mill Supply Co. v. SCA Services,*
> *Inc.,* 697 F.2d 704, 710 (6th Cir. 1982)
> (stating that "an evidentiary hearing need not
> occur in every such [disqualification]
> motion," but that the factual inquiry must be
> conducted in a manner which will allow
> appellate review); *McKinney v. McMeans*, 147
> F.Supp.2d 898, 900 (W.D.Tenn. 2001)(finding
> that "although it need not hold an evidentiary
> hearing, the court must satisfy itself that an
> adequate record exists permitting later
> appellate review").

*Philip Morris*, 312 F.Supp.2d at 34-35. She concluded:

> In short, as long as the trial court concludes
> that there will be an adequate record for
> appellate review, whether in the form of
> affidavits, documents, or submissions in
> camera, the court may in its discretion decide
> whether discovery is either warranted or
> inappropriate. Indeed, as far back as 1860,
> the Supreme Court ruled that in proceedings
> charging unprofessional conduct, the manner in
> which the proceeding was to be conducted, "so
> that it was without oppression or unfairness,
> was a matter of judicial regulation." *Randall*
> *v. Brigham*, 74 U.S. (7 Wall.) 523, 540, 19
> L.Ed. 285 (1868).

*Id.* at 35.

## B.  First Motion to Strike (papers 144 and 146)

As the basis for their first motion to strike, Plaintiffs
state that Preciado appeared without Mr. Willard at the deposition
of a witness on February 21, 2007 and actively participated by
asking questions of the deponent.  Plaintiffs allege that by
appearing without counsel at the deposition, Preciado "assumed the
control and/or responsibility of [her] case which effectively
removes former counsel from the case." (Paper 144 ¶ 8).  The only

law Plaintiffs cite in support of this proposition is 28 U.S.C. §
1654, which reads: "In all courts of the United States the parties
may plead and conduct their own cases personally or by counsel . .
. ." Plaintiffs emphasize the use of the disjunctive "or."
Plaintiffs assert that by appearing at the deposition without
counsel, Preciado essentially terminated Mr. Willard's
representation.

As an initial matter, Preciado, as an individual party, had a
right to attend the deposition without advance notice to
Plaintiffs. Local Rules, Appx. A, Discovery Guideline 5(h).
Furthermore, neither the federal nor local rules state that a party
who is represented by counsel must be accompanied by counsel to any
deposition she attends. The question, then, is whether by asking
questions of the deponent, Preciado impliedly terminated Mr.
Willard's representation.

There are no cases in this jurisdiction that discuss what
constitutes an implied termination of the attorney-client
relationship. Courts have consistently held that the client's
subjective belief is significant to the determination of whether an
attorney-client relationship is in continued existence. "The
professional relationship . . . hinges upon the client's belief[.]"
*In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 340 (4ᵗʰ Cir.
2005) (quoting *United States v. Evans*, 113 F.3d 1457, 1465 (7ᵗʰ Cir.
1997)). *See also Lawyer Disciplinary Bd. v. Battistelli*, 206 W.Va.

197, 205 (1999) (holding that personal perception of client is significant to determination of whether attorney-client relationship is in continued existence); *La. State Bar Assoc. v. Williams*, 498 So.2d 727, 728 (La. 1986) ("the existence of any attorney-client relationship turns largely on the client's subjective belief that it exists"); *Matter of McGlothlen*, 99 Wash.2d 515 (1983) (same).

The Court of Appeals of Michigan held that an attorney-client relationship can be terminated by implication. *Estate of Mitchell v. Dougherty*, 249 Mich.App. 668, 685 (2002) (per curiam). In *Estate of Mitchell,* the court affirmed the grant of summary judgment to a defendant law firm in a legal malpractice action, holding that the client had terminated the attorney-client relationship by implication prior to the allegedly negligent conduct of the law firm. The court described three scenarios where an attorney-client relationship may be terminated by implication: (1) where the client retains an alternate attorney, (2) where the attorney is retained to perform a specific legal service, upon completion of that service, and (3) where the client obtains legal advice and then has no further contact with the attorney. *Id.* at 682-686. Several years earlier, the same court held that the appearance of alternate counsel at a hearing was not sufficient proof of the termination of the attorney-client relationship.

*Lipton v. Boesky*, 110 Mich.App. 589, 599 (1981).[8]  Also in the context of a legal malpractice action, the Court of Appeals of North Carolina held in an unpublished disposition that the attorney-client relationship ended when the client filed a *pro se* notice of appeal.  *Cline v. Black*, 173 N.C.App. 447 (2005) (unpublished disposition).  In that case, the client filed at least three motions *pro se* and made no further payments to the attorney. *Id.*

No published case holds that participation in a deposition without counsel constitutes an implied termination of the attorney-client relationship.  The facts in this case are markedly different from any of the cases that have recognized a termination of the attorney-client relationship by implication in other contexts. Significantly, the client, Preciado, did not intend to terminate the relationship.  She filed, through Mr. Willard, an opposition to Plaintiffs' motion stating that she did not intend to terminate representation by Mr. Willard.  (*See generally* paper 151).  Also, since the date of the deposition, Mr. Willard has filed five memoranda on behalf of Preciado, indicating that both he and Preciado believe the attorney-client relationship is ongoing.  In

---

[8]  The court distinguished the holdings in *Lipton* and *Estate of Mitchell*, stating that the issue in *Lipton* "was whether the defendant sufficiently alleged the termination of the attorney-client relationship, not whether the existence of alternate counsel terminated the relationship as a matter of law." *Estate of Mitchell*, 249 Mich.App. at 686 n.8.

the cases that have recognized implied termination of the attorney-client relationship, there was clear evidence of the client's intent to terminate the relationship.  Evidence of that intent is lacking here.

Plaintiffs also state that allowing a litigant to "pick and choose the particular court proceedings" in which she will be represented "clearly causes havoc and chaos to the other litigants." (Paper 146 ¶ 6).  This broad statement is without factual support.  They have not alleged, for instance, that Preciado's participation in this particular deposition was disruptive in any way.  Plaintiffs have not alleged any facts that the ethical and professional standards in the legal community are in jeopardy.  *See Tessier*, 731 F.Supp. at 729.  Accordingly, the first motion to strike the appearance of counsel will be denied.

### C.  Second Motion to Strike (paper 163)

In the second motion to strike, Plaintiffs allege that (1) Mr. Willard behaved unethically by serving as legal counsel in an action where he knew or should have known he would be a witness and (2) permitting Mr. Willard to remain as counsel would frustrate necessary discovery.  (Paper 163 ¶¶ 8, 10).

Maryland Rule of Professional Conduct 3.7 states that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."  Plaintiffs state that Mr. Willard communicated with Mr. Vales on numerous occasions and that

29

those communications prompted Plaintiffs to initiate administrative complaints that are at issue in this litigation. (Paper 163 ¶ 4). The attached affidavit of Roger Vales describes a series of communications he engaged in with Mr. Willard and states that these communications prompted him and his wife "to proceed in pursuing all administrative investigations and avenues and to initiate the various investigations which are the subject of this action." (Paper 164, R. Vales Aff. ¶ 19). Plaintiffs have not clearly identified the administrative complaints they initiated, nor do they explain how they are "at issue" in this litigation. Mr. Willard states that the factual allegations contained in the supporting affidavit from Roger Vales were the subject of a recent complaint to the Attorney Grievance Commission of Maryland. (Paper 164 ¶ 2). Presumably, the complaint to the Attorney Grievance Commission is the administrative complaint referred to by Plaintiffs in their motion. Plaintiffs argue that based on his participation in those communications, Mr. Willard knew or should have known that it was probable he would be called as a witness. (Paper 163 ¶ 7). Plaintiffs do not explain this argument.

First, Mr. Willard could not be expected to anticipate that Plaintiffs would file a complaint against him with the Attorney Grievance Commission. Second, Mr. Willard does not become a likely "necessary witness" simply because the opposing party filed a grievance against him. Finally, Plaintiffs' argument that Mr.

Willard "knew of his actions and communications with the Vales' [sic] prior to his involvement in the matters pending in this Honorable Court" (paper 163 ¶ 7) is unsound.   All of the communications between Mr. Willard and Mr. Vales concerned the subject loan transaction.   (Paper 163, R. Vales Aff. ¶ 3).   At least some of the communications concerned the complaint that was filed in the Circuit Court for Montgomery County and was later removed to this court as part of the instant litigation.   (*Id*. ¶ 15).   Thus, Mr. Willard had no communications with Plaintiffs *prior* to his involvement in the pending matters, the communications were all related to the pending matters.   Mr. Willard did not act unethically by representing Preciado in this case, and thus his appearance should not be stricken.

Plaintiffs also assert that they "should be entitled to pursue discovery as to why the Complaint was filed by Mr. Willard in the Circuit Court for Montgomery County" and that Mr. Willard "should not be permitted to shield himself from being deposed by the Vales' [sic] and/or from being called as a witness at the time of trial by being permitted to remain as legal Counsel for Alma Preciado." (Paper 163 ¶¶ 9-10).   A motion to strike the appearance of counsel is a "serious matter," *Zachair, Ltd.*, 965 F.Supp. at 750, and should not be used as a tool for discovery.   Moreover, striking the appearance of Mr. Willard would not serve the end sought by Plaintiffs.   It appears that Plaintiffs are concerned that the

information they seek to discover would be protected by the attorney-client privilege or the work-product doctrine. Severing the attorney-client relationship, however, would not change the privileged nature of these communications. *See In re Criminal Investigation No. 1/296X in Circuit Court for Anne Arundel County*, 336 Md. 1,8 (1994) (the "attorney-client privilege does not cease with the termination of the relationship. In fact, the privilege is theoretically perpetual."); *see also Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 732 (4th Cir. 1974) (holding that attorney work-product remains privileged after termination of litigation). Mr. Willard's appearance will not be stricken to allow Plaintiffs to pursue discovery.

Plaintiffs' second motion to strike appearance of counsel will be denied.

## V. Conclusion

For the foregoing reasons, the motion of Roger and Lourdes Vales to file the third amended complaint (paper 103) will be granted in part and denied in part; the motion of Preciado to dismiss Down's amended cross claim (paper 104) will be granted in part and denied in part; and the motions of Roger and Lourdes Vales to disqualify counsel for Preciado (papers 144, 146 & 163) will be denied. A separate Order will follow.

           /s/
_____
DEBORAH K. CHASANOW
United States District Judge