IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER VALES, et al.           :

   v.                         :   Civil Action No. DKC 05-3110

ALMA PRECIADO, et al.          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are two motions filed by Plaintiffs/Counterdefendants Roger and Lourdes Vales: a motion for summary on Defendant/Counterplaintiff Alma Preciado's counterclaims (ECF No. 244) and a partial motion for summary judgment on the Valeses' claims against Defendants (ECF No. 245). The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion for summary judgment on Preciados' counterclaim will be granted, while the partial motion for summary judgment against Defendants will be denied.

**I. Background**

   **A. Factual Background**

The following facts are uncontroverted.[1]

---

[1] Some of the statements in the affidavits the Valeses provided – including statements about the intent of Defendants during the relevant events – are not based on personal

This case traces its beginnings to 2005, when Plaintiff Lourdes Vales received a one million dollar lump sum retirement payment. Early that year, Defendant Alma Preciado approached Lourdes and her husband, Plaintiff Roger Vales, with a proposal to use part of their retirement money to fund a loan. Preciado operated a mortgage brokerage business as a sole proprietorship called Metropolitan Financial Services ("Metropolitan") with which the Valeses had previously invested on two prior occasions. Both of those prior investments were secured with real property.

The loan Preciado proposed in January 2005 was similar to those the Valeses had previously funded. Preciado solicited $350,000 on behalf of Harry Down and Defendant Dorita Lemos Down, two parties Preciado told the Valeses she knew very well.

---

knowledge. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge." Fed.R.Civ.P. 56(c)(4). While personal knowledge may include reasonable inferences, "inferences and opinions must be grounded in observation or other first-hand personal experience." *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Any statements in the Valeses' affidavits that are not evidently based on such first-hand experience are not considered here. In addition, the Valeses' summary judgment memoranda fail to cite to any particular parts of the record in supporting their factual positions. Although "[t]he court need consider only the cited materials, . . . [it also] may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

Preciado further "vouched for their financial strength and integrity."

In March 2005, Preciado presented the Valeses with a loan application signed by Dorita Down. The loan application indicated that the $350,000 loan was to be fully secured by a piece of property in Bethesda, Maryland valued in excess of $800,000 ("the Bethesda Property"). The borrower was listed as Dorita Lemos Down, who reportedly drew an income of $14,500 a month as President of Pidegro, LLC. The Valeses later learned that Dorita Lemos Down was not on the title to the Bethesda Property, but Preciado assured the Valeses that Harry Down – the real landowner - would sign the Note and Deed of Trust at the time of closing. Based on those assurances, the Valeses agreed to fund the loan.

On April 5, 2005, the Valeses met with Preciado at Metropolitan's offices to review the Promissory Note, Deed of Trust, and HUD-1 Settlement Statement. Those documents reflected that a loan secured by the Bethesda Property was to be made to Harry Down and Dorita Lemos Down, with BMS Title serving as settlement agent. The documents also indicated that Metropolitan would serve as Trustee for the Deed of Trust on the Bethesda Property. Apparently satisfied that everything was in order, the Valeses provided Preciado with a check for $350,000,

3

which was not to be released until (1) all the necessary documents were executed by Harry Down and Dorita Lemos Down and (2) the Deed of Trust had been recorded to secure fully the loan. The Valeses then returned to their home in Florida, with assurances from Preciado that she would send them the fully executed loan documents after settlement.

The Valeses never received the promised loan documents. Wondering whether the transaction had moved forward, the Valeses contacted their bank and learned that the $350,000 check had cleared. Dorita Lemos Down negotiated the check and deposited it in a bank account held by Pidegro, LLC. Pidegro, LLC was an entity whose members included Down, Preciado, and Defendant William Camp.

The Valeses then reached out to Preciado, who initially said she would speak with BMS Title and forward the completed loan documents. The Valeses still did not receive any loan documents and Preciado began ignoring their phone calls. Alarmed, the Valeses returned to Maryland, where they learned that there was no perfected security interest on the Bethesda Property and BMS Title had never conducted any $350,000 loan settlement. Even so, Metropolitan received a $19,975.33 check for "settlement charges."

The Valeses subsequently confronted Preciado, who admitted that Harry Down, the sole owner of the Bethesda Property, was not part of and did not know of the loan transaction. Nevertheless, Preciado gave the $350,000 loan proceeds to Dorita Down, despite the fact that the loan documents were never executed and the Deed of Trust was never executed or recorded. She assured the Valeses that she would place a security interest against her own real estate. Unfortunately, the Valeses later learned that Preciado had no real estate and no security interest would be forthcoming; all property was titled her in son's name.

The Valeses now suggest that the loan was actually a scheme to fund Pedigro, LLC rather than a legitimate loan to the Downses. They insist that they never would have funded the loan had they known of Preciado's business involvement with Pidegro, LLC or that Harry Down was not actually involved in the loan transaction.

**B. Procedural Background**

This case has a long procedural history that is more fully described in previous opinions. It began when Preciado, on behalf of herself and Metropolitan and for the claimed benefit of the Valeses, filed a complaint in the Circuit Court for Montgomery County against Dorita Lemos Down, Harry Down, Camp,

Pidegro, LLC, and Harry Down.  The defendants in that action removed the case to this court based on diversity jurisdiction. *See Preciado v. Vales*, No. DKC 05-2339.  On November 16, 2006, the Valeses filed suit in this court against Preciado; Dorita Lemos Down; Camp; Pidegro, LLC; and Pidegro, Ltd. alleging fraud in connection with the loan transaction.  *See Vales, et al. v. Preciado, et al.*, No. DKC 05-3110.  The cases were consolidated on April 6, 2006.  Preciado filed an amended counterclaim against the Valeses on July 28, 2006 asserting malicious prosecution and defamation.  The Valeses have also twice amended their complaint.

On July 24, 2008, Preciado was indicted in the Circuit Court for Montgomery County on four counts:  embezzlement, perjury, theft of over $500, and fraudulent practices.  *See State v. Preciado*, No. 08-7015-00118-3.  She pled guilty to one count of embezzlement (fraudulent misappropriation by a fiduciary) on June 12, 2009.  In connection with the guilty plea, the state court entered a judgment of restitution against Preciado for $350,000, payable to the Valeses.

Just days before her criminal indictment, on July 21, Preciado filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland.  *See In re Preciado*, No. 08-19367.  The Valeses then initiated an adversary case in the

6

bankruptcy court on October 20, 2008, which sought a determination that Preciado owed the Valeses $350,000 in non-dischargeable debt. *See Vales v. Preciado*, No. 08-00764. Judge Lipp concluded that the debt was non-dischargeable and entered her own order of judgment for $350,000 plus costs and pre-judgment interest, retroactive to April 5, 2000.

The Valeses have now filed two motions for summary judgment, both on October 18, 2010. In the first, they seek summary judgment on Preciado's counterclaims. (ECF No. 244). In the first page of the second motion, the Valeses request summary judgment on Counts I, II, III, VI, and VII of their own complaint. (ECF No. 245). The supporting memorandum, however, seeks summary judgment against only Preciado and only on two counts: count III (constructive fraud) and count VI (breach of fiduciary duty). The memorandum also reserves the issue of punitive damages. In response to both motions, the court received a letter from Dorita Lemos Down.[2] (ECF No. 249). No other opposition or reply was filed.[3] (ECF No. 250).

---

[2] Later, on November 15, 2010, the Valeses also submitted certain additional exhibits in support of their motions. (ECF No. 250).

[3] Pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court notified all Defendants that the Valeses had filed a dispositive motion. (ECF Nos. 246-48). The court also informed Defendants that they were entitled

## II. Standard of Review

The Valeses have moved for summary judgment (twice) pursuant to Federal Rule of Civil Procedure 56. A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the

---

to file materials in opposition within 17 days from the date of the letter and that summary judgment could be entered if they did not establish a genuine dispute of material fact. (*Id.*).

8

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

**III. Motion for Summary Judgment on Preciado's Counterclaim**

The Valeses first move for summary judgment on Preciado's counterclaims of malicious prosecution and defamation. Preciado's amended countercomplaint contends that the Valeses engaged in malicious prosecution by swearing out an application for criminal charges in 2005 based on her alleged theft of the $350,000 loan. (That case was ultimately *nolle processed*). In addition, the countercomplaint asserts that the Valeses defamed Preciado by telling others that Preciado had been arrested and charged with theft because she stole $350,000 from them. The Valeses respond that Preciado has not established the malice and untruthfulness necessary to sustain her claims.

First is the malicious prosecution claim. In a malicious prosecution case, a plaintiff must establish that: "1) the defendant(s) instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in favor of the plaintiff; 3) the defendant(s) instituted the criminal

9

proceeding without probable cause; and 4) the defendant(s) acted with malice or for the primary purpose other than bringing the plaintiff to justice." *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 479 (2003). The Valeses argue that they possessed probable cause when initiating the proceeding and were not motivated by malice.

The Valeses are correct that Preciado fails to bring forth any grounds for denying summary judgment; indeed, the relevant facts are directly to the contrary. The Valeses served several requests for admissions on Preciado on August 23, 2010. (ECF No. 236). Preciado did not respond to any of them. Rule 36(a)(3) provides that a matter is deemed admitted when a party fails to respond to such a request within 30 days. As this court long ago held:

> It is clear that unanswered requests for admissions may properly serve as a basis for summary judgment and with a failure to make a timely response, the truth of the matter contained in the request for admission is conclusively established and may serve as the basis for the court's consideration of a motion for summary judgment.

*Donovan v. Peter*, 584 F.Supp. 202, 207-08 (D.Md. 1984) (citing *Bateson v. Porter*, 154 F.2d 566 (4th Cir. 1946)); *accord Quasius v. Schwan Food Co.*, 596 F.3d 947, 950-52 (8th Cir. 2010); *Gabbanelli Accordions & Imports, LLC v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009); *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). In the nearly one year that has passed,

Preciado has not raised any objections to the requests for admission, has not sought an extension of time to answer them, has not sought to rescind them, and has not challenged them on summary judgment. Consequently, the admissions will be deemed admitted in evaluating this motion. Preciado "had no excuse for ignoring [her] opponent's request for admissions long, long past the deadline." *Gabbanelli*, 575 F.3d at 696.[4]

Several of the admissions directly refute any claim of malicious prosecution. Among other things, Preciado has now admitted (1) that the allegations in her counterclaim were not true; (2) that all the information in the criminal Application for Statement of Charges was true and correct; and (3) that she did in fact steal $350,000 for the Valeses, committing the crime of theft. (ECF No. 244-1, at 22-25). At the very least, these admissions evidence that the Valeses' had probable cause to

---

[4] The Valeses exceeded the limit on requests for admission set under Local Rule 104.1. That rule provides that, "[u]nless otherwise ordered by the Court, or agreed upon by the parties, no party shall serve upon the other party, at one (1) time or cumulatively, . . . more than thirty (30) requests for admission (other than requests propounded for the purpose of establishing the authenticity of documents or the fact that documents constitute business records), including all parts and sub-parts." The limit does not defeat the Valeses' motion here because no objection was raised.

11

initiate the criminal action.[5]  Summary judgment must be granted on the malicious prosecution claim.

Second is the associated claim for defamation.  To prove defamation, a plaintiff must show "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009) (quotation marks omitted).  Here again, the Valeses submitted several unanswered requests for admission that are decisive on this issue.  Preciado, for instance, admits that her counterclaim was untrue; that the actions taken and statements made by the Valeses were reasonable; that "there was no defamation of [her] by either Roger Vales or Lourdes Vales because all of the statements that they have made have been completely true;" and that she suffered no harm.  (ECF No. 244-

---

[5]  It is of no moment that Preciado's earlier, verified counterclaim contained contrary facts.  "A matter admitted under this rule is *conclusively* established."  Fed.R.Civ.P. 36(b) (emphasis added).  As one court of appeals has put it, "[t]he binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact.  Once a fact is formally admitted and thereby set aside in the discovery process, the party requesting an admission is entitled to rely on the conclusiveness."  *Armour v. Knowles*, 512 F.3d 147, 154 n.12 (5th Cir. 2007) (quotation marks omitted).

1, at 24-25). These admissions "conclusively establish" that the statements were not false and did not cause any harm, two of the essential elements of the tort. Accordingly, summary judgment must be granted as to this counterclaim as well.

**IV. Motion for Partial Summary Judgment on the Vales' Complaint**

The Valeses have also moved for summary judgment on several counts of their own complaint. Plaintiffs obviously have the ability to move for summary judgment. *Bouchat*, 346 F.3d at 521-22 ("Rule 56 expressly contemplates the availability of summary judgment to a claimant. That a movant bears the ultimate burden of proof or persuasion. . . is no obstacle to a summary judgment award in favor of that party, so long as the requirements of Rule 56 are otherwise satisfied."). Still, because they would bear the burden of proof at trial, the Valeses' motion for summary judgment takes on a slightly different procedural posture than their defensive motion for summary judgment. In particular, the Valeses are entitled to summary judgment on their claims only if "the proffered evidence is such that a rational factfinder could only find for" them. *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *see also Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002) ("A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.").

As was noted above, the Valeses' motion asks for summary judgment on Counts I, II, III, VI, and VII against all Defendants. (ECF No. 245). The proposed order suggests the same relief. (ECF No. 245-4). The supporting memorandum, however, only refers to two counts – count III (constructive fraud) and count VI (breach of fiduciary duty). The Valeses have not even attempted to establish that there is no dispute of genuine material fact on any other counts against any other defendants. A fleeting request for summary judgment that is otherwise wholly unsupported and unexplained does not satisfy the requirements of Rule 56. *See* Fed.R.Civ.P. 56 (requiring movant to identify each claim or defense upon which judgment is sought and establish that there is no genuine dispute of fact). Even where, as here, some or all of the defendants fail to oppose, "summary judgment in favor of [p]laintiffs may still be inappropriate if their evidence is too scanty to justify rendering judgment." *McIntyre v. Robinson*, 126 F.Supp.2d 394, 403 (D.Md. 2000).[6]

---

[6] It may be that there is evidence supporting the Valeses' claims in their affidavits and other submissions. But lacking any guidance or argument, the court cannot construct their claims for them. *See Jurgenson v. Albin Marine, Inc.*, 214 F.Supp.2d 504, 510 (D.Md. 2002) (Davis, J.) (explaining that the court is not required to "scour the record" on summary judgment).

As for the two counts against Preciado that are properly presented, the Valeses seek a judgment of $350,000 against Preciado while reserving the issue of punitive damages. (ECF No. 245-4). Yet the Valeses already hold two judgments – entered by the Circuit Court for Montgomery County and the United States Bankruptcy Court for the District of Maryland – that award them the $350,000 that they now seek for a third time. There is no apparent reason why a third duplicative judgment would be necessary. The ordinary rule is that "a judgment between the same parties . . . is a final bar to any other suit upon the same cause of action." *Alvey v. Alvey*, 225 Md. 386, 390 (1961); *see also Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 108 (2005). "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948). It is also irrelevant that the present action potentially advances different legal theories against Preciado; a party may not recover twice for a single injury, even if the party asserts multiple theories of recovery. *See, e.g.*, *Montgomery Ward & Co., Inc. v. Cliser*, 267 Md. 406, 425 (1972) ("It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double

recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories. . . . The overlapping of damages is generally not permissible, and a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence or event." (quotation marks omitted)).

In short, it would appear that any claim against Preciado for compensatory damages based on the $350,000 misappropriated should be dismissed. Therefore, the Valeses will be ordered to show cause within 14 days why any such claims should not be dismissed. Summary judgment for the Valeses will not be granted on those claims at this time.

## V. Conclusion

For the foregoing reasons, the motion for summary judgment on Preciados' counterclaim will be granted, while the partial motion for summary judgment against Defendants will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
