**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROGER R. VALES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-05-3110 |
| | ) | |
| **ALMA PRECIADO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Before the Court is Vales' Memorandum in Support of Pre-Judgment Interest and Other Relief ("Plaintiffs' Memorandum")(ECF No. 330) and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). Plaintiffs are ordered to submit a revised calculation of damages consistent with the findings made herein. Plaintiffs' revised calculations shall be submitted within seven (7) days.

**I.    Facts**

On May 28, 2013, the Court found in favor of Plaintiffs Roger and Lourdes Vales against Defendant Dorita Down as to their claims of Intentional Misrepresentation (Count One) and Deceit (Count Two); in Plaintiffs' favor against Pidegro, LLC for Unjust Enrichment (Count Five) in the amount of $189,000.00, and against Defendant Down under the same claim in the amount of $350,000.00. The Court required additional submissions regarding the monies owed by each Defendant.

On April 5, 2005, Plaintiffs provided a check, made payable to Defendant Down in the amount of $350,000.00 in reliance upon the following documents signed by Defendant Down.

1. Uniform Residential Loan Application – reflecting a loan amount of $350,000.00, to be repaid in 360 months with an interest rate of 17%, with an expected monthly payment of $4,958.00 (Pls.' Ex. 5a);

2. A Truth in Lending Disclosure Statement reflecting the same terms (but indicating the monthly payments would be $4989.86) (Pls.' Ex. 8);

3. A collection of financial disclosures reflecting late charges for overdue payments at "5% of the overdue monthly payment of principal and interest" (Pls.' Ex. 9);

4. Balloon Payment Riders to the Mortgage/Deed of Trust, declaring that any unpaid balance is due in full in two years (Pls.' Exs. 26 and 27); and

5. The Balloon Note ("Balloon Note") reflecting that in exchange for the loan, Defendant Down agrees to repay the loan at 17% interest "both before and after any default." This Balloon Note also requires all outstanding amounts to be paid on May 31, 2007. Defendant Down's monthly payment under the Balloon Note is $4,958.00, and it also indicates that overdue payments will incur a late charge of 5% of the amount of any overdue principal and interest. (Pls.' Exs. 28 and 29).

The net result of the agreements reached on April 5, 2005 was that Defendant Down was receiving a loan, for which she was to pay interest only for two years. At the end of two years, if timely payments were made, the full balance of $350,000 became due. Plaintiffs' Memorandum seeks prejudgment interest under the Balloon Note and other relief which Defendant Down opposes. The parties are at odds over whether tort or contract damages apply to Counts One and Two.

**II.     Plaintiffs are entitled to a "Benefit of the Bargain" Theory of Prejudgment Interest at the Rate Set Forth under the Balloon Note.**

Defendant Down does not challenge the accuracy of Plaintiffs' prejudgment interest calculations, merely whether it is appropriate to include a "benefit-of-the-bargain" approach under fraud and deceit theories of recovery. The applicable law is set forth in Goldstein v. Miles, 159 Md. App. 403, 859 A.2d 313 (2004). As stated in Goldstein, when fraud type charges are asserted, "benefit-of-the-bargain" damages are available when there is an enforceable bargain. Id. at 316. Maryland has long adhered to a "flexibility theory" in fraud and misrepresentation cases, leaving for Plaintiff's election a decision whether to recover either "out-of-pocket" expenses or "benefit-of-the-bargain" damages. Id. at 324. The Goldstein court when on to quote Professor McCormick when he stated that the "benefit-of-the-bargain" damages are available "if the trial judge, in his discretion considers that, in view of the probable moral culpability of the defendant, and the definitiveness of the representations and the ascertainability of the represented value, (then) the case is an appropriate one for such treatment." Id. at 326 (quoting Charles T. McCormick, *Handbook on the Law of Damages* §121, at 454 (1935)(footnotes omitted)). Finally, the Maryland appellate courts have impliedly recognized "the legitimacy of such damages in fraud and negligent misrepresentation cases in which there is an actual contract between the parties." Id. at 327 (additional citations omitted).

Without doubt there is in place an enforceable bargain between Plaintiffs and Defendant Down. The only remaining question is whether in view of "the probable moral culpability" of Defendant Down, and the "definiteness of the representations and ascertainability of the represented value," whether this Court in its discretion should permit the recovery of "benefit-of-the-bargain" damages. The Court has ruled that Defendant Down was complicit and morally

3

culpable in this fraudulent scheme to obtain hundreds of thousands of dollars from Plaintiffs. While she may not have been as responsible as her co-defendant Alma Preciado, it was Defendant Down's conduct that made the fraud possible. Equally true, the agreements between the parties could not have been clearer. While the negotiated interest rate on the Balloon Note was friendly to Plaintiffs, there have been no assertions of impropriety from their hand. In fact it was the improving interest rate which greatly motivated Plaintiffs to agree to the transaction in the first place. Mr. Vales testified to Ms. Preciado increasing the interest rate offered from 12%, to 15%, and then eventually to 17%. Defendant Downs was culpable, and the oral and written representations were clear and unambiguous.

Defendant Down correctly notes in her opposition that early in the process Plaintiffs were aware that the anticipated security for the loan was not in place. This lack of security, however, does not extinguish or diminish Plaintiffs' negotiated expectations under the Balloon Note. It merely made clear to Plaintiffs that should Defendant Down fail to make timely payments, Plaintiffs ability to recover their investment would be at risk. This is exactly where Plaintiffs find themselves today, seeking relief from the Court with a lower degree of certainty of compensation than they contracted to receive. Arguably, Plaintiffs sought to rescind the agreement in May and June of 2005. Nonetheless, their failure to do so does not compromise their ability to seek damages under "benefit-of-the-bargain" theory of fraud.

Defendant Down is entitled to credit for three payments made under the terms of the Balloon Note. Plaintiffs have accounted for this in their calculations. Defendant Down is also entitled to a credit of all monies plus accrued interest which were being held pursuant to writs of attachments that have now been released to Plaintiffs.

The "benefit-of-the-bargain" theory has no applicability with respect to the claim of unjust enrichment, where the appropriate measure of recovery is the "gain to the defendant, not the loss to the Plaintiff." Mass Transit Admin. v. Granite Constr., 57 Md. App. 766, 775 (1984). Accordingly, the damages due under a theory of unjust enrichment are fixed at $350,000.00.

### III.    The Litigation Stay Has No Effect on the Obligation to Pay.

Defendant Down's suggestion that a stay of litigation should result in a stay of penalties and interest under the Balloon Note is misplaced. In the absence of an agreement between the parties or an Order of the Court, there is no support for the notion that a stay of litigation tolls the continuing financial obligations in the event of a finding of liability. Defendant Down has offered no authority for such a conclusion. This Court finds nothing inequitable about requiring Defendant Down to pay debts that are continuing to accrue over the course of this litigation.

### IV.    Plaintiffs' Claim for Late Fees Must be Tempered.

Defendant Down correctly notes that once a default has occurred under the Balloon Note, the calculation of late fees should cease. Such an approach would be inequitable. See In re 1095 Commonwealth Ave. Corp., 294 B.R. 284, 305 (Bkrtcy. D. Mass. 1997). All debt under the Balloon Note became due on May 21, 2007. Accordingly, no late fees shall be permitted as of May 30, 2007.

### V.    The Prejudgment Interest Rate is Appropriate and Enforceable.

Under Md. Code. Ann. Com. Law § 12-103, the rate of interest under the Balloon Note is permissible. Defendant Down's reliance on Maryland Rule 2-604 regarding the method in which pre-judgment interest is required to be separately stated in the verdict is misplaced. Plaintiffss access to this federal court is based on the complete diversity of citizenship between the parties. The law of the state of Maryland controls the substantive law of this case. However,

5

this Court is not bound by the rules of the procedure applicable in the Maryland state courts. Fed. R. Civ. P. 1.

## VI. Amounts Owed by Pidegro, LLC.

On May 28, 2013, the Court determined that Pidegro, LLC was on notice of its unjust enrichment as of May 17, 2005, when Pidegro, LLC had $189,000.00 left in its account. These monies were owed to Plaintiffs. As stated in Plaintiffs Memorandum, Pidegro's judgment amount should be reduced by funds received, leaving a balance due of $175,483.02 as of the date of judgment.

## VII. Punitive Damages

The Court has received and reviewed Defendant Down's affidavit regarding her assets and Plaintiffs' opposition. Defendant Down's affidavit suggests she is a woman of very limited means. Plaintiffs provide a report from the Maryland Department of Transportation, Motor Vehicle Administration (MVA) in support of their belief that Defendant Down is not being candid. The Court has access to the MVA information and is satisfied, that as to the vehicles registered to Defendant Down in Maryland, she has not made a misrepresentation. The Hyundai Elantra is co-owned with her husband and bears a current registration. The other vehicle mentioned is not registered, is very old, and was most likely discarded years ago. Nonetheless, in light of Defendant Down's testimony in these proceedings and the Court's findings of fraud, the Court shares Plaintiffs deep reservations about Defendant Down's overall candor. The Court will award punitive damages at the time of its determination of the final sums due Plaintiffs.

**VIII.   Conclusion**

In view of the findings set forth herein, Plaintiffs are Ordered to submit a revised calculation of damages within seven (7) days.  Within seven (7) days of said filing, Defendant Down is permitted to submit further objections as to the accuracy of said calculation.

September 11, 2013                                                    _____/s/_____
                                                                                      Charles B. Day
                                                                                      United States Magistrate Judge

CBD/bab