IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROGER R. VALES, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. DKC-05-3110 |
| ALMA PRECIADO, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the issue of damages arising from the Court's entry of default against Defendant Alma Preciado on November 10, 2011 (ECF 272). Pursuant to 28 U.S.C. § 636, Local Rules 301 and 302, the Honorable Deborah K. Chasanow referred this matter to me for "making a Report and Recommendation concerning damages."

The claims as to Ms. Preciado were severed from the remaining claims brought by Roger R. Vales and Lourdes Vales as Plaintiffs, against Dorita Lemos Down, William Camp, Jr., and Pidegro, LLC. These remaining claims were tried before me with the consent of the parties. The entry of default against Defendant Preciado is applicable to the following claims:

**Under Cross-Claims filed by Co-Defendant Dorita Down (ECF 94):**

Count I for Contribution and Indemnification

**Under Plaintiffs' Third Amended Complaint (ECF 181):**

Count III – Constructive Fraud

Count IV – Intentional Misrepresentation

1

Count V – Unjust Enrichment

Count VI – Breach of Fiduciary Duty[1]

Following the trial involving the remaining parties, the undersigned finds that Defendants Preciado and Down were co-conspirators in committing fraud and deceit upon Plaintiffs. An oral decision was issued on May 28, 2013. In summary, Plaintiffs presented evidence of damages arising from Defendant Preciado's fraudulent activities as their "settlement agent." The evidence consisted of Mr. Vales' presentation of a check to Defendant Preciado in the amount of $350,000.00 with instructions that it should not be released to Defendant Down until all of the necessary loan documents were executed. The principle expectation of Plaintiffs was that the signature of Mrs. Down's husband, Harry Down, would be affixed to the loan documents thereby using Mr. Down's home as security for the loan. Defendant Preciado fraudulently acquired Plaintiffs' funds with no intention of fulfilling her obligations while acting as Plaintiffs' agent.[2] Said monies were actually used to finance the activities of Pidegro, LLC, a company in which Defendants Preciado and Down were stakeholders.

## I.   Calculation of Damages

**A.     Tort Theories of Recovery.**

I believe Plaintiffs are entitled to recover monies from Defendant Preciado under a tort theory of compensation. With respect to the claims against Defendant Down, Plaintiffs have

---

1     In this Amended Complaint, Plaintiffs alleged in Count VIII, a claim for injunctive relief in an effort to prevent the spending, using or transferring of assets believed to be wrongfully held by Defendants. The Court explained that this was not a "claim" but a "remedy" and therefore this count will not be addressed.

2     Plaintiffs' evidence included deposition testimony from Defendant Preciado in which Defendant Preciado asserted her Fifth Amendment privilege against self-incrimination to every question over a two hour period. (See Pls.' Ex. 7).

2

elected to pursue "benefit-of-the-bargain" type damages under a "flexibility theory" as permitted under the case of Goldstein v. Miles, 159 Md. App. 403, 859 A.2d 313 (2004). While I have found that Defendant Preciado was a co-conspirator, there is no indication that Plaintiffs were expecting the "benefit-of-the-bargain" from her. Defendant Preciado was never the intended beneficiary of the loan, and was not the signatory on any of the loan documents. Simply put, while Defendant Preciado was complicit in the fraud, her liability to Plaintiffs falls under the more classic remedy of fraud under a tort theory of damages.

Here, Plaintiffs have demonstrated a "compensable injury resulting from the misrepresentation." The Redemptorists v. Coulthard Servs., 145 Md. App. 116, 801 A.2d 1104, 1126 (2002)(quoting Nails v S&R, Inc., 334 Md. 398, 639 A.2d 660 (1994). Specifically, Plaintiffs were defrauded of $350,000.00 which they extended as an investment. Under the Maryland Constitution, Plaintiffs are entitled to pre-judgment interest at a rate of 6% per annum. Md. Const. Art. III, §57. Based upon the evidence at trial, I have determined that the date of loss was April 5, 2005, the day Plaintiffs provided the check payable to Defendant Down which was promptly negotiated. Accordingly, the annual rate of interest is $21,000.00, and the daily rate is $58.33. As of November 10, 2011, (the date of the entry of default), Plaintiffs are entitled to 2,409 days of interest, which converted amounts to $140,516.97 of prejudgment interest. The total compensatory amount due as of the date of the entry of default is $490,516.97. The post-judgment interest rate is ten percent per annum. Md. Code Ann., Cts. & Jud. Proc., §11-107 (LexisNexis 2013). Plaintiffs are entitled to post-judgment interest at the rate of $49,051.69 per year. These amounts are applicable to the fraud, intentional misrepresentation and breach of fiduciary duty claims. I recommend the Court issue an order in favor of Plaintiffs in this full

amount. It is my belief that Defendants Preciado and Down are jointly and severably liable for the monies owed to Plaintiffs under the fraud and intentional misrepresentation theories. I also recommend the award of costs to Plaintiffs for the present litigation.

  **B. Equitable Theories of Recovery**

As the so called "settlement agent" in this fraudulent transaction, Defendant Preciado operated through the auspices of her company, Metropolitan Financial Services. Upon Defendant Down's receipt of Plaintiffs' check in the amount of $350,000.00, it was deposited into the account of Pidegro, LLC. From that account, Metropolitan Financial Services received $19,975.33 (Pls.' Exs. 54 and 55) for services provided to Plaintiffs. Defendant Preciado was fully aware of the improper source of these funds. Plaintiffs are entitled to recover under the unjust enrichment theory of Count V when they prove: 1) a benefit was conferred upon Defendant, 2) that there is an appreciation or knowledge by Defendant of the benefit, and 3) the acceptance or retention by Defendant of the benefit under such circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value. Berry and Gould v. Berry, 360 Md. 442, 151 (2000). On these facts, the Court could enter an order of restitution in the amount of $19,975.33, plus pre-judgment interest of 6 percent in the amount of $1,198.52 per year, or a daily rate of $3.28 until November 10, 2011. This amount totals $7,901.52. The post-judgment rate of interest is 10 percent and therefore is $790.15 per year. I am of the view that an award under Count V is merely cumulative and should not be issued.[3]

---

3 I am similarly mindful of the prior judgment flowing from criminal charges against Defendant Preciado in Montgomery County Circuit Court. I make no recommendation regarding this exercise of the Court's discretion.

## C. Punitive Damages

Under Count IV of the Amended Complaint, Plaintiffs seek punitive damages for intentional misrepresentation. Plaintiffs have properly pled and proved "actual malice." As stated by this Court, proof of fraud is also proof of actual malice. <u>Sterling v. Ourisman Chevrolet of Bowie, Inc.</u>, No. PWG-12-3193, 2013 WL 1870781 at*18 (D. Md. 2013). Punitive damages are available against individuals upon a showing of actual malice. <u>Robles v Prince George's County, Maryland</u>, 302 F.3d 262, 273 (D. Md. 2002).

The purpose of punitive damages is to punish the defendant for bad conduct and to deter others from doing likewise. <u>Owings-Corning v. Garrett</u>, 343 Md. 500, 682 A.2d 1143 (1996). A plaintiff must demonstrate that the defendant's conduct is characterized by "knowing and deliberate wrongdoing." <u>Ellerin v. Fairfax Savings</u>, 337 Md. 216, 652 A.2d 1117 (1995). In actions of deceit punitive damage are permissible when it is shown that the defendant knows that the representation is false. <u>Id.</u> at 235. Given the complexity of the financial transactions, and the knowledge that Defendant Down's husband would not agree to be a signatory to the transaction, and testimony demonstrating Defendant Preciado's knowledge of the transactions being unsupported by a secured interest, Defendant Preciado was fully aware that her representations were false. Plaintiff's entitlement to punitive damages on these facts has been demonstrated by clear and convincing evidence.

Supreme Court precedent indicates the Court should look to three factors in determining an appropriate amount for punitive damages. Specifically, the Court should look to: 1) the degree of reprehensibility of the defendant's conduct, 2) the disparity between the actual potential harm suffered by the plaintiff and the punitive award; and 3) the difference between the

punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. BMW of North America, Inc., v Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996). While the initial factor is the most important one, the Court should consider: whether the harm caused was physical versus economic; whether the tortious conduct exists; whether there is an indifference to or a reckless disregard of the health and safety of others; whether the target of the conduct had financial vulnerability; whether the conduct involved repeated acts or was an isolated event; and whether the harm was the result of intentional malice, trickery, or deceit, or a mere accident. Id. at 576-77. The record here demonstrates that this was an economic injury posing no health or safety risk to others. Defendant Preciado took advantage of Plaintiffs' financial vulnerability given that Plaintiffs were using their retirement funds to invest in this financial transaction. Plaintiffs had made at least two previous investments with Defendant Preciado without incident. The harm was the direct result of her intentional misrepresentations.

The Court must also be guided by the factors set forth in Bowden v. Caldor, Inc., 350 Md. 4, 710 A.2d 267 (1998). The Court must make sure that the award of punitive damages is not disproportionate to the gravity of the defendant's wrong or the defendant's ability to pay; the Court should look to the deterrence value of such a sanction; fines assessed under the state civil and criminal codes and the legislative policies such fines represent; as well as comparisons with other punitive damages awards in the jurisdiction. In doing so I observed that in Nails v. S & R, Inc., the Court upheld a punitive damage award in the amount of $100,000.00 each for two Plaintiffs based upon two separate acts of fraud.

The compensatory damage awards recommended here are sizable. I find Defendant Preciado's conduct more reprehensible than that of her co-defendant Dorita Down. Given all of

6

the factors set forth above, I recommend a punitive damage award in the amount of $50,000.00.

## II.  Conclusion

In sum, I recommend that damages be awarded to Plaintiffs Roger and LourdesVales in the amount of $490,516.97 for Plaintiffs' claims with respect to Count III - Fraud, Count IV - Intentional Misrepresentation, and Count VI - Breach of Fiduciary Duty, with post-judgment interest from November 10, 2011.  I recommend that any award under Count V – Unjust Enrichment, be merged with the awards for Counts III, IV, and VI.  I also recommend an award of punitive damages under Counts III and IV in the amount of $50,000.00, along with the costs of this action.

/s/
Charles B. Day
United States Magistrate Judge

October 11, 2013